**Exhibit B to Bidding Procedures/Sale Motion**

Sale Order

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| PERSONAL COMMUNICATIONS | ) | Case No.  13- |
| DEVICES, LLC, *et al.*,[1] | ) | 13- |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

_____

### ORDER AUTHORIZING AND APPROVING
### (A) THE SALE OF SUBSTANTIALLY ALL OF THE
### DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND
### ENCUMBRANCES AND (B) ASSUMPTION AND ASSIGNMENT OF
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO THE SUCCESSFUL BIDDER

Upon the motion (the "Motion")[2] of Personal Communications Devices, LLC ("PCD") and Personal Communications Devices Holdings, LLC ("Holdings", and together with PCD, the "Debtors") for an order, pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, authorizing and approving the proposed sale of substantially all of the assets (such assets to be sold pursuant to this Order, the "Assets") of the Debtors to [__] (the "Buyer"), pursuant to that certain Asset Purchase Agreement, dated [__], 2013, a copy of which is attached hereto as Exhibit A (the "Agreement"); the Court having considered the Motion and the Agreement, objections thereto, the statements of counsel and any testimony or offer of proof as to testimony on the record at the hearing on [__] __, 2013 (the "Approval Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and it appearing that the relief requested in the Motion is in the best

---

[1]  The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are:  Personal Communications Devices, LLC, a Delaware limited liability company (4171) and Personal Communications Devices Holdings, LLC, a Delaware limited liability company (4096).  The Debtors' mailing address is 80 Arkay Drive, Hauppauge, Suffolk County, NY 11788.
[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Agreement, as applicable.

interests of the Debtors, their bankruptcy estates, their creditors and other parties-in-interest; and

after due deliberation and good cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[3]

       **A.**      **Jurisdiction and Venue**.  This Court has jurisdiction to consider this Motion

under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue

of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

       **B.**      **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion

are Bankruptcy Code sections 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006.

       **C.**      **Notice**.  As evidenced by the affidavits of service filed with this Court and based

upon the representations of counsel at the Approval Hearing: (i) due, proper, timely, adequate

and sufficient notice of the Motion, the Auction, the Approval Hearing and the transactions set

forth in the Agreement (the "<u>Transaction</u>"), including the assumption and assignment of the

Assigned Contracts and Cure Amounts with respect thereto, has been provided in accordance

with Bankruptcy Code sections 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006;

(ii) it appearing that no other or further notice need be provided; (iii) such notice was and is

good, sufficient and appropriate under the circumstances; and (iv) no other or further notice of

the Motion, the Auction, the Approval Hearing or the Transaction (including the assumption and

assignment of the Assigned Contracts), is or shall be required.

       **D.**      **Opportunity to Object**.  A reasonable opportunity to object and to be heard with

respect to the Motion and the relief requested therein has been given, in light of the

circumstances, to all interested persons and entities, including the following: (a) the U.S.

Trustee; (b) counsel to the official committee of unsecured creditors appointed in these cases (the

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Bankruptcy Rule 7052.

"Committee"); (c) all parties known to be asserting a lien on any of the Assets; (d) all known vendors, suppliers, customers, lenders, contract, license and lease counterparties; (e) all entities known to have expressed an interest in acquiring any of the Assets; (f) the United States Attorney's office; (g) all state attorney generals in states in which the Debtors do business; (h) various federal and state agencies and authorities asserting jurisdiction over the Assets, including the Internal Revenue Service and the Securities and Exchange Commission; (i) the Buyer and its counsel; (j) all other parties that have filed a notice of appearance and demand for service of papers in the Debtors' chapter 11 cases under Bankruptcy Rule 2002 as of the date of the filing of the Motion; (k) all regulatory authorities having jurisdiction over the Debtors; and (l) all other known creditors and parties in interest of the Debtors.

E.    **Corporate Authority**.  (i) The Debtors have full corporate power and authority to execute the Agreement and all other documents contemplated thereby and the Debtors' sale of the Assets has been duly and validly authorized by all necessary corporate action, (ii) the Debtors have all of the corporate power and authority necessary to consummate the transactions contemplated by the Agreement, (iii) the Debtors have taken all corporate action necessary to authorize and approve the Agreement and the consummation of the transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtors to consummate such transactions.

F.    **Sale in Best Interests**.  Good and sufficient reasons for approval of the Agreement and the Transaction have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

G.    **Business Justification**.  The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the

Transaction other than in the ordinary course of business under Bankruptcy Code section 363(b) before, and outside of, a plan of reorganization in that, among other things, the immediate consummation of the Transaction with the Buyer is necessary and appropriate to maximize the value of the Debtors' estates.  Entry of an order approving the Agreement and all the provisions thereof is a necessary condition precedent to the Buyer consummating the transactions set forth in the Agreement.

**H.**    **No Sub Rosa Plans**.    The consummation of the Sale outside a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan.

**I.**    **Arm's-Length Sale**.    The Agreement was negotiated, proposed and entered into by the Debtors and the Buyer without collusion, in good faith and from arm's-length bargaining positions.    The Buyer is not an "insider" of any of the Debtors, as that term is defined in Bankruptcy Code section 101(31).    Neither any of the Debtors, nor the Buyer has engaged in any conduct that would cause or permit the Agreement to be avoided under Bankruptcy Code section 363(n).    Specifically, the Buyer has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.

**J.**    **Good-Faith Buyer**.    The Buyer is a good-faith purchaser of the Assets within the meaning of Bankruptcy Code section 363(m) and, is therefore entitled to all of the protections afforded thereby.    The Buyer has proceeded in good faith in all respects in connection with this proceeding in that: (a) Buyer complied with the provisions in the Bidding Procedures Order; (b) Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order dated [__] __, 2013; and (c) all payments to be made by the Buyer and other

4

agreements or arrangements entered into by the Buyer in connection with the Transaction have been disclosed.

**K.    Highest and Best Offer**.  The Debtors conducted the Auction in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order.  The Auction established in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets.  The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity was given to any interested party to make a higher and better offer for the Assets.  The Assets have been adequately marketed and the Agreement constitutes the highest and best offer for the Assets.  The Debtors' determination that the Agreement constitutes the highest and best offer for the Assets is a valid and sound exercise of their fiduciary duty and constitutes a valid and sound exercise of the Debtors' business judgment.

**L.    Fair and Reasonable Consideration**.  The consideration given by the Buyer in exchange for the Assets is fair and reasonable under the circumstances of these chapter 11 cases.  No other person or entity or group of entities, other than the Buyer, has offered to purchase the Assets for an amount that would give greater economic value to the Debtors' estates.  Approval of the Motion and the Agreement and the consummation of the transactions contemplated thereby are in the best interests of the Debtors, their creditors, their estates and all other parties in interest.

**M.    Purchase Price**.  The Purchase Price includes (i) a cash component necessary to satisfy in full the DIP Obligations and First Lien Credit Obligations by wire transfer from the Buyer to the DIP Agent at the Closing, (ii) execution of the Credit Suisse Note and Security Agreement and Quality One – Credit Suisse Guaranty and (iii) the PineBridge Notes and

5

Security Agreements, issued in the aggregate principal amount of $17,500,000 and the Quality One – PineBridge Guaranty, subject to increase for the Net Working Capital Adjustment.

N.      **Free and Clear**.  The Debtors are the sole and lawful owner of the Assets, or have a valid, enforceable property interest in such Assets.  The transfer of the Assets to the Buyer under the Agreement will be a legal, valid, and effective transfer of the Assets, and vests or will vest the Buyer with all right, title, and interest of the Debtors to the Assets free and clear of all Liens, Claims, encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature whatsoever (collectively, the "Interests"), including, but not limited to, (i) those that purport to give to any party a right or option to effect any forfeiture, modification or termination of the Debtors' interests in the Assets, or any similar rights and (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing Date.  For avoidance of doubt, all Interests other than the Assumed Liabilities shall attach to the cash proceeds received by the Debtors ultimately attributable to the property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Assets or their proceeds, if any, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto. Notwithstanding the foregoing, the DIP Obligations and First Lien Credit Obligations shall be Paid in Full in cash by wire transfer from Buyer to the DIP Agent at the Closing.

The Debtors may sell the Assets free and clear of any Interests of any kind or nature whatsoever because in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Each entity with an Interest in the Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Order, and,

6

with respect to the Second Lien Lenders, subject to the terms and conditions of that certain Lender Consent among the Second Lien Lenders and the Debtors, dated August [__], 2013, consented to the Transaction or is deemed to have consented to the Transaction; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of Interests who did not object to the Motion are deemed, subject to the terms of this Order, to have consented pursuant to Bankruptcy Code section 363(f)(2).  All holders of Interests are adequately protected by having their Interests attach to the cash proceeds received by the Debtors that are ultimately attributable to the property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Assets or their proceeds, if any, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

O.    **Not a Successor**.  Buyer (a) is not a successor to the Debtors, (b) has not, de facto or otherwise, merged with or into the Debtors, (c) is not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, (d) does not have a common identity of incorporators, directors or equity holders with the Debtors, and (e) is not holding itself out to the public as a continuation of the Debtors.

P.    **Cure/Adequate Assurance**.  The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  The Buyer has (i) to the extent necessary, cured or provided adequate assurance of cure, of any default existing

7

prior to the date hereof with respect to the Assigned Contracts, within the meaning of 11 U.S.C.
§§ 365(b)(1)(A) and 365(f)(2)(A), and (ii) to the extent necessary, provided compensation or
adequate assurance of compensation to any party for any actual pecuniary loss to such party
resulting from a default prior to the date hereof with respect to the Assigned Contracts, within
the meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A).  The Buyer's promise to perform the
obligations under the Assigned Contracts after the Closing Date shall constitute adequate
assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C), 365(b)(3) (to
the extent applicable) and 365(f)(2)(B).

   **Q.** **Prompt Consummation**.  The Transaction must be approved and consummated
promptly in order to preserve the viability of the Debtors' business as a going concern, to
maximize the value of the Debtors' estates.  Time is of the essence in consummating the
Transaction.

   NOW, THEREFORE, IT IS ORDERED THAT:

   1. **Motion is Granted**.  The Motion and the relief requested therein is GRANTED
and APPROVED, as set forth herein.

   2. **Objections Overruled**.  Any objections to the entry of this Order or the relief
granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or
not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on
the merits with prejudice.

   3. **Approval**.  The Agreement and all of the transactions contemplated thereby are
hereby approved.  The Debtors are hereby authorized and directed to (a) execute the Agreement,
along with any additional instruments or documents that may be reasonably necessary or
appropriate to implement the Agreement; *provided* that such additional documents do not
materially change its terms; (b) consummate the Transaction in accordance with the terms and

LIBNY/5272970.15

conditions of the Agreement and the instruments to the Agreement contemplated thereby; and (c) take all other and further actions as may be reasonably necessary to implement the transactions contemplated by the Agreement.

4.      **Free and Clear**.  Except as expressly permitted or otherwise specifically provided for in the Agreement, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon Closing, good and marketable title in and to the Assets shall be transferred to the Buyer free and clear of all Interests of any kind or nature whatsoever, including, but not limited to, (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or the Buyer's interest in the Assets, or any similar rights, (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to ownership or operation of the Assets prior to the Closing, and (iii) (a) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, Liens, judgments, demands, encumbrances, rights of first refusal, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership, (b) all debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or any of the Debtors' predecessors or affiliates, and (c) Claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests, and matters of any kind an nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the Petition Date, including, without limitation, any product liability, guarantee, assurance, or warranty (whether expressed or implied) or that arise out by operation of law, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, all claims arising under doctrines of successor liability, with all such Interests of any

9

kind or nature whatsoever to attach to the net proceeds of the Sale of the Assets with the same order, priority, validity, force and effect, which they now have against the Assets subject to any claims and defenses the Debtors or their estates may possess with respect thereto.  The Buyer shall initiate a wire transfer to the DIP Agent at Closing in an amount that fully satisfies the DIP Obligations and First Lien Credit Obligations.

5.    **Valid Transfer**.  As of the Closing Date, (a) the transactions contemplated by the Agreement effect a legal, valid, enforceable and effective sale and transfer of the Assets to Buyer, and shall vest Buyer with title to such Assets free and clear of all Liens and Excluded Liabilities and (b) this Agreement and the transactions and instruments contemplated hereby shall be enforceable against and binding upon Buyer and Seller, and not subject to rejection or avoidance by the Debtors or any chapter 11 or chapter 7 trustee of the Debtors and their estates.

6.    **General Assignment**.  On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer to Buyer of the Debtors' interests in the Assets.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

7.    **Injunction**.  Except as expressly permitted by the Agreement (including the Credit Suisse Note and Security Agreement, the Quality One – Credit Suisse Guaranty, the PineBridge Notes and Security Agreements and the Quality One – PineBridge Guaranty, as contemplated by the Agreement) or by this Order, all persons and entities, including, but not limited to, the Debtors' employees, former employees, all debt security holders, equity security holders, administrative agencies, governmental, tax and regulatory authorities, secretaries of

10

state, federal, state and local officials, lenders, contract parties, lessors, trade creditors and all other creditors, holding Interests of any kind or nature whatsoever against or in the Debtors or in the Debtors' interests in the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, such Assets or with respect to any Interests arising out of or related to the Assets, shall be and hereby are forever barred, estopped and permanently enjoined from commencing, prosecuting or continuing in any manner any action or other proceeding of any kind against Buyer, its property, its successors and assigns, alleged or otherwise, its affiliates or such Assets.  Notwithstanding the foregoing, nothing herein shall prevent (i) the Debtors from pursuing an action against the Buyer arising under the Agreement or the related documents, or (ii) any administrative agencies, governmental, tax and regulatory authorities, secretaries of state, federal, state and local officials from properly exercising their police and regulatory powers.

8.    **Release of Interests**.  This Order shall be effective as a determination that, on the Closing Date, all Interests other than the Assumed Liabilities of any kind or nature whatsoever existing as to the Assets prior to the Closing Date have been unconditionally released, discharged and terminated as to such Assets only, and that the conveyances described herein have been effected; provided, for the avoidance of doubt, that all such Interests of any kind or nature whatsoever shall attach to the net proceeds of the Sale of the Assets with the same order, priority, validity, force and effect, which they now have against the Assets, subject to any claims and defenses the Debtors or their estates may possess with respect thereto.

9.      **Release of Credit Suisse and PineBridge Claims**.

(i)      In consideration of receiving the duly executed Credit Suisse Note and Security Agreement and Quality One – Credit Suisse Guaranty, the CS Term Lenders hereby irrevocably release and discharge any and all claims the CS Term Lenders have against the Debtors or their estates pursuant to the Second Lien Credit Agreement; provided that, notwithstanding any other provision of this Order or the Agreement, and without limiting the free and clear nature of the Sale and/or discharge against the Debtors, and as between the CS Term Lenders and PineBridge only, nothing in this Order or in any other order or agreement executed and delivered in connection with the Sale shall permit or allow PineBridge to receive or retain any cash payment in respect of the Obligations (as defined in the Second Lien Credit Agreement) (i) unless and until the CS Term Lenders have been paid in full in cash or (ii) except as expressly permitted under an intercreditor agreement related to the obligations under each of the Credit Suisse Note and Security Agreement, Quality One – Credit Suisse Guaranty, PineBridge Notes and Security Agreements and the Quality One – PineBridge Guaranty.  The obligations and financial accommodations under the Credit Suisse Note and Security Agreement and Quality One – Credit Suisse Guaranty are provided in good faith, for legitimate business purposes and for fair and reasonably equivalent value, and are reasonable.

(ii)      In consideration of receiving the duly executed PineBridge Notes and Security Agreement and the Quality One – PineBridge Guaranty, PineBridge hereby irrevocably releases and discharges any and all claims PineBridge may have against the Debtors or their estates pursuant to the Second Lien Credit Agreement.  The obligations and financial accommodations under the PineBridge Notes and Security Agreements and

12

Quality One – PineBridge Guaranty are provided in good faith, for legitimate business purposes and for fair and reasonably equivalent value, and are reasonable.

10.    **Direction to Release Interests**.  On the Closing Date and subject to the Interests attaching to the cash proceeds of the Sale as provided for in Paragraphs 4 and 27 of this Order, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Assets, if any, as such Interests may have been recorded or may otherwise exist.

11.    **No Successor Liability**.  Neither Buyer nor its affiliates, successors or assigns shall be deemed, as a result of the purchase of the Assets or any action taken in connection with the purchase of the Assets, to: (a) be a successor to the Debtors or their estates; (b) have, de facto or otherwise, merged or consolidated with or into the Debtors or their estates; or (c) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. Consummation of the Agreement and the transactions contemplated thereby and therein do not effect a de facto merger or consolidation of the Debtors with Buyer.  Buyer is not the alter ego of, a successor-in-interest to, or a continuation of the Debtors.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Agreement (including the Credit Suisse Note and Security Agreement, the Quality One – Credit Suisse Guaranty, the PineBridge Notes and Security Agreements and the Quality One – PineBridge Guaranty, as contemplated by the Agreement), the Buyer shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character including, but not limited to, any such liability that may be imposed by statute (*e.g.*, under so-called "bulk-sale" laws) or any theory of antitrust, environmental, products liability, successor or transferee liability, labor law, de facto

13

merger, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the ownership or operation of the Assets prior to the Closing.  Except to the extent Buyer otherwise specifically agreed in the Agreement (including the Credit Suisse Note and Security Agreement, the Quality One – Credit Suisse Guaranty, the PineBridge Notes and Security Agreements and the Quality One – PineBridge Guaranty, as contemplated by the Agreement) and this Order, Buyer shall have no liability, responsibility or obligation for any Claims, liabilities or other obligations of the Debtors or their estates, including without limitation, any Claims, liabilities or other obligations related to the Assets prior to Closing.  Under no circumstances shall the Buyer be deemed a successor of or to the Debtors for any Interests against, in or to the Debtors or the Assets.

**12.**    **Assumption and Assignment of Assigned Contracts**.    Under  11 U.S.C. §§ 105(a) and 365, and subject to and conditioned upon the Closing of the Transaction, the Debtors' assumption and assignment of the Assigned Contracts identified on Exhibit B hereto to the Buyer free and clear of all Interests pursuant to the terms set forth in the Agreement, as modified by the terms of any amendments reached with the respective counterparty, is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1), 365(b)(3) and 365(f)(2) with respect thereto are hereby deemed satisfied.  Each Counterparty to an Assigned Contract hereby is forever barred, and estopped from raising or asserting against the Debtors, or Buyer, or the property of either, any assignment fee, default, breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent

14

or non-contingent, senior or subordinate) arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the Closing. The Debtors are further authorized to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Buyer.

13.    If a Contract Objection has been filed in accordance with the Bidding Procedures Order, and such objection has not been resolved consensually or by the Court at the Approval Hearing, the Debtors shall submit such objection to the Bankruptcy Court on not less than five (5) days' notice (a "Cure Objection Hearing"). If, prior to a Cure Objection Hearing, the parties consensually resolve such objection, the Debtors shall file a Certificate of No Objection with respect to the agreed upon Cure Amount and, if any, other applicable terms. Provided no party in interest objects within one (1) business day of the filing of the Certificate of No Objection, the subject Assigned Contract shall be deemed assumed by the Debtors and assigned to the Buyer as of the date of entry of this Order pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code free and clear of all Interests of any kind or nature whatsoever as provided herein, including the provisions of Paragraph 12 hereof.

14.    The pendency of a dispute relating to Cure Amounts will not prevent or delay the assumption and assignment of any Assigned Contract as part of the Sale. During the pendency of a dispute relating to Cure Amount under an Assigned Contract, Buyer shall escrow in a segregated account at Closing the undisputed Cure Amount pending agreement of the parties or further order of the Court with respect to the disputed Cure Amount. The Buyer shall be authorized to remove an Assigned Contract from the list of contracts and leases to be assumed and assigned in the event the Court makes a final determination that the applicable Cure Amount is in excess of the proposed Cure Amount. In the event Buyer removes a contract or lease from

the list of contracts or leases to be assumed and assigned, any Cure Amounts escrowed by the Buyer shall thereafter promptly be released to the Buyer.

15.     There shall be no rent accelerations, assignment fees, increases (including advertising rates) or any other fees charged to the Buyer or the Debtors as a result of the assumption and assignment of the Assigned Contracts.

16.     Any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract, are either deemed satisfied or constitute unenforceable anti-assignment provisions that are void and of no force and effect.

17.     The Buyer has provided adequate assurance of its future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors, and assignment to the Buyer of the Assigned Contracts have been satisfied.

18.     Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, (i) the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assigned Contracts; and (ii) the Debtors shall be relieved from any liability for any breach of such Assigned Contracts occurring thereafter pursuant to section 365(k) of the Bankruptcy Code.

19.     To the extent any governmental license or permit is necessary for the operation of the business is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code, Buyer shall apply for and obtain any necessary license or

permit promptly after the Closing and to the extent permitted by law such licenses or permits of the Debtors shall remain in place for the Buyer's benefit until new licenses and permits are obtained. Debtors shall have no liability under such licenses or permits after Closing.

20. Notwithstanding anything herein to the contrary and subject to the terms of the Agreement, Buyer may remove any Contract from the list of Assigned Contracts (and thereby exclude such Contract from the definition of Assigned Contracts) by providing written notice to the Debtors and the counter-parties to such contract(s) at least three (3) Business Days prior to the Closing.

21. **Cure**. The Buyer shall pay all Cure Amounts relative to the contracts to be assigned on the Closing Date in accordance with the terms of the Agreement, and the Seller shall not have any obligation to pay, or any liability for, any such Cure Amounts. Cure Amounts payable under the Assigned Contracts shall be paid promptly after closing. The payment of the applicable Cure Amounts (if any) shall (a) effect a cure of all defaults existing thereunder as of the Closing Date, (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default, (c) together with the assumption of the Assigned Contracts by the Debtors, constitute adequate assurance of future performance thereof; and (d) otherwise satisfy the requirements of Section 365 of the Bankruptcy Code. The non-Debtor party or parties to each Assigned Contract which is to be assigned on the Closing Date are forever barred from asserting against the Debtors, the Buyer, any of its affiliates or any of the Assets: (i) any fee, default, breach, claim or pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, mature or unmatured, contingent or non-contingent, senior or subordinate) arising under or related to the Assigned Contract existing as of the Closing Date or arising by

reason of the Closing, and (ii) any objection to the assumption and assignment of such non-Debtor party's Assigned Contracts.

22.     **Binding Effect of Order**.  This Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

23.     **Binding on Successors**.  The terms and provisions of the Agreement and this Order shall be binding in all respects upon the Debtors, their estates, all creditors of (whether known or unknown) and holders of equity interests in, the Debtors, Buyer and their respective affiliates, successors and assigns, and any affected third parties, wherever located, including, but not limited to, all persons asserting Interests in the Assets and all non-Debtor counterparties to the Assigned Contracts, notwithstanding any subsequent appointment of any trustee of the Debtors under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.  This Order and the Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Buyer, and their respective successors and assigns.

24.     **Bankruptcy Code Section 363(n)**.  The consideration provided by Buyer for the Assets under the Agreement is fair and reasonable and may not be avoided under Bankruptcy Code section 363(n) and shall not be subject to challenge under any applicable non-bankruptcy law.

25. **Good Faith**.  The transactions contemplated by the Agreement are undertaken by Buyer without collusion and in good faith, as that term is used in Bankruptcy Code section 363(m) and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction (including the assumption and assignment of the Assigned Contracts) with Buyer, unless such authorization is duly stayed pending such appeal.  Buyer is a good faith purchaser of the Assets, and is entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m).

26. **Fair Consideration**.  The consideration provided by the Buyer to the Debtors pursuant to the Agreement for its purchase of the Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code.

27. **Surrender of Possession**.  The Debtors shall exercise commercially reasonable efforts to assure that all entities that are presently, or on the Closing Date may be, in possession of some or all of the Assets in which the Debtors hold an interest will surrender possession of the Assets either to (i) the Debtors before the Closing Date, or (ii) to Buyer on the Closing Date.

28. **Retention of Jurisdiction**.  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to Buyer; (b) compel delivery of the cash component of the Purchase Price or performance of other obligations owed to the Debtors; (c) interpret, implement and enforce the provisions of this Order and the Agreement; (d) to adjudicate, if necessary, any and all disputes concerning or

relating in any way to the Transaction; and (e) protect Buyer against any Interests in the Debtors or the Assets of any kind or nature whatsoever, attaching to the proceeds of the Transaction.

29. **Sale Proceeds**.  Any and all valid and perfected Interests in Assets of the Debtors shall attach to any cash proceeds of such Assets immediately upon receipt of such proceeds by the Debtors (or any party acting on the Debtors' behalf) in the order of priority, and with the same validity, force and effect which they now have against such Assets, if any, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto, and, in addition to any limitations on the use of such cash proceeds pursuant to any provision of this Order.  Notwithstanding the foregoing, the Buyer is hereby directed to initiate a wire to the DIP Agent in an amount sufficient to satisfy in full the DIP Obligations and First Lien Credit Obligations at the Closing.   Upon receipt of the foregoing amounts, the DIP Obligations and the First Lien Credit Obligations (as defined in the DIP Order) of the Debtors shall be deemed fully satisfied and discharged subject to the rights afforded to the DIP Secured Parties and the First Lien Secured Parties as set forth in Section 2.21 of the DIP Credit Agreement and Section 2.21 of the First Lien Credit Agreement.

30. **Non-material Modifications**.  The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court; *provided* that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

31. **Subsequent Plan Provisions**.  Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or in any other order in these chapter 11 cases (including any order entered after any conversion of any of these cases to

a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the

provisions of the Agreement or this Order.  This Order and the Agreement shall be binding in all

respects upon all creditors (whether known or unknown) of the Debtors, all parties in interest in

the Bankruptcy Cases, all successors and assigns of the Buyer, the Debtors and their Affiliates,

subsidiaries and parents, the Assets, and any trustee appointed or elected in the Bankruptcy Case

or upon a conversion to chapter 7 of the Bankruptcy Code and shall not be subject to rejection

pursuant to section 365 of the Bankruptcy Code.  Nothing contained in any chapter 11 plan(s)

confirmed in the Bankruptcy Cases or the order confirming any such chapter 11 plan(s) shall

conflict with, impair, negate or be contrary to inconsistent with the provisions of the Agreement

or this Order.  To the extent of any such inconsistency, the terms of the Agreement and this

Order shall govern.  The provisions of this Order and the terms and conditions of the Agreement

and the related documents shall be binding upon, fully enforceable against and inure to the

benefit of any trustee, responsible officer or other fiduciary appointed under any section of the

Bankruptcy Code or any applicable law.  Such binding effect is an integral part of the

Transaction and this Order.

       **32.**   **Failure to Specify Provisions**.  The failure specifically to include any particular

provisions of the Agreement in this Order shall not diminish or impair the effectiveness of such

provisions, it being the intent of the Court that the Agreement be authorized and approved in its

entirety; *provided, however*, that this Order shall govern if there is any inconsistency between the

Agreement (including all ancillary documents executed in connection therewith) and this Order.

Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

       **33.**   **No Stay of Order**.  Notwithstanding the provisions of Bankruptcy Rule 6004(h)

and Bankruptcy Rule 6006(d), this Order shall not be stayed for fourteen days after the entry

hereof, but shall be effective and enforceable immediately upon issuance hereof.  Time is of the

essence in closing the transactions referenced herein, and the Debtors and Buyer intend to close

the Transaction as soon as practicable.  Any party objecting to this Order must exercise due

diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

34.     **Cooperation with Administration of the Estate**.  The tax accountants of the

Debtors will have reasonable access, on a confidential basis, to copies of the books and records

constituting Assets that are required to enable such tax accountants to prepare Tax filings or

reports regarding Sellers' ownership of the Assets prior to the Closing or the conduct of the

Business prior to the Closing.  The Buyer and any Transferred Employees shall cooperate with

all reasonable requests of the Debtors and provide any information or documentation reasonably

necessary to enable the Debtors to administer their estates and to reconcile claims.  Except as

otherwise provided in the Agreement or this Order, Buyer shall not be liable for any costs, fees

and/or expenses associated with the administration of the Debtors' estates and/or reconciliation

of claims, including, but not limited to, (i) any administrative fees and expenses, including,

without limitation, allowed administrative expenses under section 503(b) of the Bankruptcy

Code; (ii) any transaction costs, fees and expenses in connection with the Debtors' obligations

under the Agreement or this Order; and (iii) any rejection damages claimed in the Debtors'

chapter 11 cases.

35.     **Confidentiality Agreements**.  The Debtors are authorized to enforce their rights

under any confidentiality agreements they entered into with other potential bidders with respect

to the Assets for the benefit of the Buyer for the term of each respective confidentiality

agreement.  All rights of the Debtors under each non-disclosure agreement executed by any

entity prior to the date of entry of this Order are property of the Debtors' estates that may and

LIBNY/5272970.15

shall be transferred to the Buyer at Closing, as Assets, pursuant to Section 363(b) and (f) and free and clear of all Interests.  Nothing in this paragraph shall be deemed to constitute a finding that any such non-disclosure agreement is an Assigned Contract (unless expressly identified as such in the Agreement) or that the Buyer will assume at Closing any obligations to the non-Debtor party to any such non-disclosure agreement.

36.    **Further Assurances**.  From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by the Agreement including, such actions as may be necessary to vest, perfect or confirm, of record or otherwise, in Buyer its right, title and interest in and to the Assets, including, without limitation, any Seller Intellectual Property Assets.

37.    **Consummation of Transactions; Injunction**.  Upon entry of this Order, no further corporate action of the Debtors or approval of any Debtor's equity security holders shall be required to authorize the Debtors to consummate the transactions contemplated by the Agreement.  Except as expressly permitted by this Order, all holders of claims against or equity interests in the Debtors shall be and hereby are forever barred, estopped and enjoined from commencing, prosecuting or continuing in any manner any action or other proceeding of any kind against the Debtors' employees, officers, directors, advisors or attorneys on account of or related to the Agreement or the transactions contemplated thereby.  Nothing herein shall prevent any administrative agencies, governmental, tax and regulatory authorities, secretaries of state, federal, state and local officials from properly exercising their police and regulatory powers.  Buyer is not and will not become obligated to pay any fee or commission or like payment to any

broker, finder or financial advisor as a result of the consummation of the Transaction

contemplated by the Agreement based upon any arrangement made by or on behalf of the

Debtors, provided that nothing herein shall relieve the Debtors of their obligations to make

payments, pursuant to applicable orders of this Court, to professionals retained in these cases.

Dated:      _____, 2013
            Central Islip, New York


_____
UNITED STATES BANKRUPTCY JUDGE

LIBNY/5272970.15