**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
Tel:  (212) 813-8800
Fax:  (212) 355-3333
Emanuel C. Grillo
Matthew L. Curro
Christopher Newcomb

*- and -*

**TOGUT, SEGAL & SEGAL LLP**
One Penn Plaza, Suite 3335
New York, New York  10119
Tel:  (212) 594-5000
Frank A. Oswald
David A. Paul
Leo Muchnik

*Proposed Co-Counsel to the*
*Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| PERSONAL COMMUNICATIONS | ) | Case No.  13- |
| DEVICES, LLC, *et al.*,[1] | ) | 13- |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF EPIQ BANKRUPTCY SOLUTIONS, LLC AS NOTICE AND CLAIMS AGENT**

---

[1]     The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are:  Personal Communications Devices, LLC, a Delaware limited liability company (4171) and Personal Communications Devices Holdings, LLC, a Delaware limited liability company (4096). The Debtors' mailing address is 80 Arkay Drive, Hauppauge, Suffolk County, NY 11788.

Personal Communications Devices, LLC ("PCD") and Personal Communications Devices Holdings, LLC ("Holdings", and together with PCD, the "Debtors"), debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), file this application (this "Application") for the entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the employment and retention of Epiq Bankruptcy Solutions, LLC ("Epiq") as notice and claims agent in connection with the Chapter 11 Cases.  In support of this Application, the Debtors submit the Declaration of Todd W. Wuertz, Director of Consulting Services (the "Wuertz Declaration"), attached hereto as **Exhibit B** and incorporated by reference herein.  In further support of this Application, the Debtors respectfully state as follows:

### Jurisdiction

1.      The United States Bankruptcy Court for the Eastern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

2.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408.

4.      The statutory bases for the relief requested herein is section 156(c) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), E.D.N.Y. Local Bankruptcy Rule 5075-1 and the Guidelines for First Day Motions adopted by the Board of Judges for this Court ("First Day Guidelines").

### Background

5.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.      The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      No trustee, examiner, creditors' committee, or other official committee has been appointed in the Debtors' Chapter 11 Cases.

8.      PCD, one of the above-captioned debtors, which is headquartered in Hauppauge, New York, distributes wireless communication devices and accessories, and provides value-added services to mobile device manufacturers and wireless telecom carriers.  Collectively, the Debtors act as a critical intermediary between domestic wireless carriers (e.g., Verizon Wireless, Sprint, AT&T) and various foreign, generally smaller market, wireless handset manufacturers. In that role, PCD provides numerous product planning, logistics, reverse logistics, and after-market services that are designed to benefit and streamline the path to the end user for all sides of the wireless device supply chain.

9.      The Debtors service domestic wireless carriers by acting as the carrier's trusted partner in screening and qualifying new vendors to fill product lineups and by providing supply chain and technical services to bring those products to market.  On the other side of the supply equation, the Debtors also work directly with various foreign wireless handset manufacturers to shepherd their products through all stages of product development in the domestic carrier market. In addition to working to bring devices to market, PCD also provides a full complement of authorized repair and warranty services to its domestic carrier clients.

10.      In 2012, the Debtors generated $1.6 billion in revenue but suffered a loss of $16.9 million on a normalized basis.  Due to a number of factors, including a shift in consumer preferences within the mobile device market and the damage inflicted upon the Debtors by its prior management, the Debtors' business has declined, such that their resulting cash flow is

insufficient to meet the Debtors' debt service requirements.  The Debtors have sought chapter 11 protection to effect a sale of substantially all of their assets, which the Debtors believe will maximize the return to all stakeholders, as well as preserve the maximum number of jobs for PCD's current employees.

11.     A detailed description of the Debtors' business, capital structure, and the circumstances leading to the chapter 11 filings is set forth in the *Declaration of Raymond F. Kunzmann in Support of Chapter 11 Petitions and First Day Motions and Applications* (the "First Day Declaration") filed contemporaneously herewith and incorporated herein by reference.[2]

**Relief Requested**

12.     By this Application, the Debtors seek an order pursuant to section 156(c) of title 28 of the United States Code authorizing the employment and retention of Epiq as their notice and claims agent in the Chapter 11 Cases in accordance with the terms and conditions set forth in that certain Services Agreement dated as of June 4, 2013, by and between the Debtors and Epiq (the "Services Agreement"), a copy of which is annexed as **Exhibit 1** to **Exhibit A** attached hereto and incorporated by reference herein.

13.     By separate application, the Debtors will seek authorization to retain and employ Epiq as administrative advisor in the Chapter 11 Cases pursuant to section 327(a) of the Bankruptcy Code (the "Section 327 Application") because the administration of the Chapter 11 Cases will require Epiq to perform duties for the Debtors outside the scope of 28 U.S.C. § 156(c).

---

[2]     Capitalized terms used but not defined herein shall have the meanings set forth in the First Day Declaration.

## Epiq's Qualifications

14.     The number of creditors and other parties in interest involved in the Chapter 11 Cases may impose heavy administrative and other burdens on the Court and the Office of the Clerk of the Court (the "Clerk's Office").  To relieve the Clerk's Office of these burdens, the Debtors seek an order appointing Epiq as the notice and claims agent in the Chapter 11 Cases pursuant to 28 U.S.C. § 156(c) and E.D.N.Y. Local Bankruptcy Rule 5075-1.

15.     The Debtors' estates and their creditors will benefit from Epiq's retention because Epiq has developed efficient and cost-effective methods in this area of expertise.  Epiq is fully equipped to handle the volume of mailing involved in properly sending the required notices to, and processing the claims of, creditors in the Chapter 11 Cases.  Epiq is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases.  Epiq has substantial experience in matters of this size and complexity, and has acted as the official notice and claims agent in many large bankruptcy cases pending in this and other districts.  See, e.g., In re RDA Holding Co., Case No. 13-22233 (Bankr. S.D.N.Y Feb. 17, 2013); In re Metro Fuel Corp., Case No. 12-46913 (Bankr. E.D.N.Y., Sep. 27, 2012); In re Sbarro, Inc., Case No. 11-11527 (Bankr. S.D.N.Y. Apr. 5, 2011); In re N. Am. Petroleum Corp., Case No. 10-11707 (Bankr. D. Del. May 28, 2010); In re U.S. Concrete, Inc., Case No. 10-11407 (Bankr. D. Del. Apr. 30, 2010); In re the Majestic Star Casino, LLC, Case No. 09-14136 (Bankr. D. Del. Nov. 24, 2009); In re Stallion Oilfield Servs., Ltd., Case No. 09-13562 (Bankr. D. Del. Oct. 20, 2009); In re Old Carco LLC (f/k/a Chrysler LLC), Case No. 09-50002 (Bankr. S.D.N.Y. May 4, 2009); In re Mark IV Indus., Inc., Case No. 09-12795 (Bankr. S.D.N.Y. May 4, 2009); In re Caritas Health Care, Inc., Case No. 09-40901 (Bankr. E.D.N.Y., Feb. 13, 2009); In re Flying J, Inc.,

Case No. 08-13384 (Bankr. D. Del. Jan. 14, 2009); In re Lyondell Chem. Co., Case No. 09-10023 (Bankr. S.D.N.Y. Jan. 7, 2009); In re Lehman Bros. Holdings Inc., Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 16, 2008); In re Hines Horticulture, Inc., Case No. 08-11922 (Bankr. D. Del. Aug. 22, 2008); In re Frontier Airlines Holdings, Inc., Case No. 08-11298 (Bankr. S.D.N.Y. May 2, 2008).[3] Epiq will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

### Services to be Provided

16.     At the request of the Debtors or the Clerk's Office, Epiq may perform various notice and claims related services, including, without limitation, the following:

(a)     Maintain a list of all potential creditors and notify all potential creditors of the filing of the bankruptcy petitions and of the setting of the first meeting of creditors, pursuant to section 341(a) of the Bankruptcy Code, under the proper provisions of the Bankruptcy Code and the Bankruptcy Rules as determined by Debtors' counsel;

(b)     Prepare and serve required notices in the Chapter 11 Cases, including:

i.      notices of commencement of these Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

ii.     notices of objections to claims (if necessary); notices of any hearings on a disclosure statement and confirmation of a plan or plans of reorganization; and

iii.    such other miscellaneous notices and other

---

[3]    Because of the voluminous nature of the orders cited herein, they are not attached to this Application.  Copies of these orders are available upon request of the Debtors' proposed counsel.

pleadings or documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases.

(c)   Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, the "Schedules and Statements"), listing the Debtors' known creditors and the amounts owed thereto;

(d)   Process all proofs of claim / interests submitted;

(e)   Create and maintain an electronic database for creditor / party in interest information provided by the Debtors and creditor / party in interest;

(f)   Create and maintain a publicly-accessible case administration website (located at http://dm.epiq11.com/PCD) containing information about the Debtors' Chapter 11 Cases;

(g)   Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form);

(h)   Provide access to the public for examination of copies of the proofs of claim or proofs of interest filed in the Chapter 11 Cases without charge during regular business hours (if necessary);

(i)   Furnish a notice of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by the Court;

(j)   Maintain a post office box for the purpose of receiving claims;

(k)   Notify all potential creditors of the existence and amount of their respective claims as evidenced by the Debtors' books and records and as set forth in the Schedules and Statements;

(l)   Mail claim acknowledgement letters to filers of claims;

(m)   For all notices, motions, orders and other pleadings and/or documents served by the Debtors, prepare and file with the Clerk's Office an affidavit or certificate of service, which includes a copy of the notice, a list of persons to whom it was mailed (in alphabetical order), and the date mailed, within seven (7) days of service;

(n)     Docket all claims received by the Clerk's Office, maintain the official claims registers (collectively, the "Claims Registers") for each Debtor on behalf of the Clerk, and provide the Clerk with certified duplicate, unofficial Claims Registers on a quarterly basis, unless otherwise directed;

(o)     Record all transfers of claims, pursuant to Bankruptcy Rule 3001(e) and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(p)     Specify in the applicable Claims Register, the following information for each claim docketed: (1) the claim number assigned; (2) the date received; (3) the name and address of the claimant and agent, if applicable, who filed the claim; and (4) the classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.);

(q)     Specify, in the applicable Claims Register, the status of the claim (i.e., withdrawn, expunged, allowed, paid, etc.);

(r)     Relocate by messenger all of the actual proofs of claim filed with the Court to Epiq, not less than weekly;

(s)     Upon completion of the docketing process for all claims received to date by the Clerk's Office for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review;

(t)     Make changes in the Claims Registers pursuant to any applicable order of the Court;

(u)     Update the Claims Registers to reflect withdrawals of claims;

(v)     Maintain the official mailing list for each Debtor of all entities that have filed a proof of claim, which list shall be available upon request by a party-in-interest or the Clerk;

(w)     Monitor the Court's docket for all address changes, notices of appearance and claims-related pleadings and order filed and make necessary notations on and/or changes to the claims register;

(x)     Update addresses on the Claims Registers and creditor matrix to reflect address updates requested by creditors, provided by the USPS or otherwise;

(y)     Provide a call center or other creditor hotline, respond to

creditor inquiries via telephone, letter, email, facsimile or otherwise, as appropriate, and related services;

(z)     Manage and coordinate the publication of legal notices, as requested;

(aa)    Provide such other claims processing, noticing, and administrative services that would fall within the purview of the Clerk's office as may be requested from time to time by the Debtors, the Court or the Clerk's Office;

(bb)    File with the Court the final version of the Claims Register immediately before the close of the Chapter 11 Cases;

(cc)    Thirty (30) days prior to the close of the Chapter 11 Cases, an order dismissing Epiq shall be submitted terminating the services of Epiq upon completion of its duties and responsibilities and upon the closing of the Chapter 11 Cases; and

(dd)    At the close of the case, box and transport all original documents, in proper format, as provided by the Clerk's Office, to the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064, or any other location requested by the Clerk's office.

17.     In addition to the foregoing, Epiq will (a) maintain and update the Debtors' master mailing list of creditors and notice parties, (b) track and administer claims, (c) perform tasks related to the services provided herein; and (d) perform such other administrative tasks pertaining to the administration of the Chapter 11 Cases as may be requested by the Debtors, the Court or the Clerk's Office in accordance with the terms of the Services Agreement.

### **Professional Compensation**

18.     The Debtors propose to retain and compensate Epiq on the terms and conditions set forth in the Services Agreement.  The Debtors believe that the rates negotiated with Epiq are reasonable and appropriate for the services to be rendered during the Chapter 11 Cases.  Prior to retaining Epiq, the Debtors solicited proposals from two other firms that provide comparable

services and believe that Epiq's rate structure is more than reasonable in light of their experience and reputation for handling large Chapter 11 Cases.

19.    The Debtors also propose that the cost of Epiq's services be paid from the Debtors' estates pursuant to section 156(c) of title 28 of the United States Code and section 503(b)(1)(A) of the Bankruptcy Code.  Moreover, the Debtors believe that the fees and expenses incurred by Epiq are administrative in nature and should not be subject to the standard fee application procedures for professionals.  As such, the Debtors request authority to compensate Epiq in accordance with the terms and conditions set forth in the Services Agreement, without further Court order, upon receipt of an invoice from Epiq by the Debtors, unless Epiq is advised, within ten (10) days of receipt of the invoice, that the Debtors object to the invoice, in which case the Debtors or Epiq will schedule a hearing before the Court to consider the disputed invoice if the parties cannot resolve the dispute consensually.  In the event of a disputed invoice that cannot be resolved consensually, the Debtors will remit to Epiq only the undisputed portion of the invoice and, if applicable, will pay the remainder to Epiq upon the resolution of the disputed portion, as mandated by the Court.  Notwithstanding the foregoing, Epiq may require prepayment from the Debtors under certain circumstances.  Prior to the Petition Date, the Debtors paid Epiq a retainer of $25,000.

20.    Additionally, under the terms of the Services Agreement, the Debtors have agreed to indemnify, defend and hold Epiq, its affiliates, parent and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees harmless under certain circumstances specified in the Services Agreement, except in circumstances resulting solely from Epiq's gross negligence or willful misconduct or as otherwise provided in the Services Agreement.  The Debtors believe that such an indemnification obligation is

10

customary, reasonable, and necessary to retain the services of a notice and claims agent in the Chapter 11 Cases.

21.     Epiq will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

### Epiq's Disinterestedness

22.     Although, pursuant to this Application, the Debtors do not propose to employ Epiq under section 327 of the Bankruptcy Code (such retention will be sought by separate application), Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the entities provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Wuertz Declaration, Epiq has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code.  Epiq will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such disclosure.

23.     In connection with its retention as notice and claims agent, Epiq represents, among other things, that:

> (a)     Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the notice and claims agent in the Chapter 11 Cases;

> (b)     By accepting employment in the chapter 11 cases, Epiq waives any rights to receive compensation from the United States government in its capacity as the notice and claims agent in the Chapter 11 Cases;

> (c)     In its capacity as the notice and claims agent in the Chapter

11

11 Cases, Epiq will not be an agent of the United States and
will not act on behalf of the United States; and

(d)     Epiq will not employ any past or present employees of the
Debtors in connection with its work as the notice and
claims agent in the Chapter 11 Cases.

### Basis for Relief

24.     Section 156(c) of title 28 of the United States Code, which governs the staffing

and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other

than the Clerk's Office for administration of bankruptcy cases.  It states:

> Any court may utilize facilities or services, either on or off the
> court's premises, which pertain to the provision of notices,
> dockets, calendars, and other administrative information to parties
> in cases filed under the provisions of title 11, United States Code,
> where the costs of such facilities or services are paid for out of the
> assets of the estate and are not charged to the United States.  The
> utilization of such facilities or services shall be subject to such
> conditions and limitations as the pertinent circuit council may
> prescribe.

28 U.S.C. § 156(c).

25.     In addition, E.D.N.Y. Local Bankruptcy Rule 5075-1 provides in pertinent part as

follows:

> The Court may permit, subject to the supervision of the Clerk, the
> use of services and agents to maintain Court records, issue notices,
> file certain documents, and maintain and disseminate other
> administrative information when the costs of such services and
> agents are paid for by the estate.

E.D.N.Y. LBR 5075-1.

26.     Pursuant to Local Rule 5075-1, the Debtors have spoken with the Clerk's Office,

have shared a draft of the Application with the Clerk and have received and incorporated the

Clerk's comments into the Application and Order prior to filing.

27.     In compliance with the E.D.N.Y. Local Bankruptcy Rules and First Day

12

Guidelines, the Debtors obtained and reviewed engagement proposals from three court-approved notice and claims agents. The Debtors provided three notice and claims agents with basic facts about the Debtors' case and asked each notice and claims agent to submit a written proposal based on the facts. Based on correspondence with the claims agents and their answers to case-specific pricing questions, the Debtors selected Epiq as their notice and claims agent on account of Epiq's superior capability and price terms.

28. Further, section 3(k) of the First Day Guidelines instructs debtors to retain a claims and noticing agent in a case where it is anticipated that 1,000 or more proofs of claim will be filed. There are more than 1,000 creditors of the Debtors in these Chapter 11 Cases.

29. Given the number of creditors and other parties in interest involved in the Debtors' Chapter 11 Cases, the Debtors seek an order appointing Epiq as the notice and claims agent in the Chapter 11 Cases pursuant to 28 U.S.C. § 156(c) and E.D.N.Y. Local Bankruptcy Rule 5075-1 in order to relieve the Court and the Clerk's Office of these heavy administrative and other burdens.

**The Debtors' Reservation of Rights**

30. Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their right to contest any invoice or claim related to the relief requested herein in accordance with applicable non-bankruptcy law.

**Notice**

31. Notice of this Application has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) Edwards Wildman Palmer LLP as counsel to

JPMorgan; (c) Latham & Watkins LLP as counsel to DLJ Investment Partners; (d) Patton Boggs LLP as counsel to PineBridge Investments; (e) Shipman & Goodwin LLP as counsel to U.S. Bank, N.A., in its capacity as the Second Lien Agent, (f) the Taxing Authorities; (g) the Internal Revenue Service; (h) the Securities & Exchange Commission; (i) the Debtors' consolidated top thirty (30) largest unsecured creditors and (j) all other parties required to receive service under Rules 2002-2 of the Local Bankruptcy Rules for the Eastern District of New York and the First Day Guidelines.  A copy of this Application is also available on the website maintained by the Debtors' notice and claims agent, Epiq Systems, Inc.   In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

### **No Prior Request**

32.    No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated: August 19, 2013
      Hauppauge, New York

                                     PERSONAL COMMUNICATIONS DEVICES, LLC

                                     By:    /s/ Raymond F. Kunzmann
                                            Name: Raymond F. Kunzmann
                                          Title:  Chief Financial Officer

                                      PERSONAL COMMUNICATIONS DEVICES HOLDINGS, LLC

                                   By:    /s/ Raymond F. Kunzmann
                                            Name: Raymond F. Kunzmann
                                          Title:  Chief Financial Officer