UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| PERSONAL COMMUNICATIONS | ) | Case No. 13-74303 (AST) |
| DEVICES, LLC, *et al.*,[1] | ) | 13-74304 (AST) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DECLARATION OF DAVID SAPERSTEIN IN
SUPPORT OF DEBTORS' MOTION FOR ENTRY OF ORDERS:
(A)(I) APPROVING BIDDING PROCEDURES RELATING TO
SALE OF THE DEBTORS' ASSETS; (II) APPROVING BID
PROTECTIONS; (III) SCHEDULING A HEARING TO CONSIDER
THE SALE; (IV) APPROVING THE FORM AND MANNER OF NOTICE
OF SALE BY AUCTION; (V) ESTABLISHING PROCEDURES FOR NOTICING
AND DETERMINING CURE AMOUNTS; AND (VI) GRANTING RELATED
RELIEF; AND (B)(I) APPROVING ASSET PURCHASE AGREEMENT AND
AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS; (II) AUTHORIZING THE SALE OF ASSETS FREE AND
CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS;
(III) AUTHORIZING THE ASSUMPTION, SALE AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF**

I, David Saperstein, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury:

1. I am over the age of 18 and competent to testify. I am a Vice President at BG Strategic Advisors, LLC ("BGSA"), which maintains offices at 525 South Flagler Drive, Suite 200, West Palm Beach, Florida 33401. BGSA specializes in investment banking services and strategic analysis in the supply chain logistics sector. BGSA is a recognized market leader known for its expertise in advising supply-chain logistics companies on mergers, acquisitions, financings and restructurings. Personal Communications Devices, LLC and Personal

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Personal Communications Devices, LLC, a Delaware limited liability company (4171) and Personal Communications Devices Holdings, LLC, a Delaware limited liability company (4096). The Debtors' mailing address is 80 Arkay Drive, Hauppauge, Suffolk County, NY 11788.

Communications Devices Holdings, LLC (the "Debtors")[2] retained BGSA to offer strategic advice on the reorganization or sale of their business. I submit this declaration in support of the Debtors' motion (the "Motion") for entry of an order (the "Bidding Procedures Order") (i) approving bidding procedures relating to sale of the Debtors' assets; (ii) approving bid protections; (iii) scheduling a hearing to consider the bidding procedures; (iv) approving the form and manner of notice of sale by auction; and (v) approving procedures for the assumption, sale, and assignment of certain executory contracts.

Unless otherwise stated, all facts and statements included in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me or verified by the Debtors or the Debtors' other professional advisors and/or my opinion based upon my knowledge of the Debtors' business. I am duly authorized to make this declaration on behalf of BGSA and the Debtors. If called upon to testify, I can and will testify competently to the facts set forth herein.

## The Debtors' Sale and Marketing Process

2. Since approximately October, 2012, the Debtors have engaged in a strategy to maximize the value of their assets for the benefit of all stakeholders, and, together with their advisors, began soliciting interest from strategic and financial investors for a sale, or recapitalization transaction that would enable the Debtors to continue operations as a going concern. In January of 2013, the Debtors retained BGSA to explore the possibility of a sale of substantially all of the Debtors' assets. In connection therewith, BGSA contacted sixty-seven (67) strategic and financial investors regarding an investment in the Debtors or a sale transaction that would ensure the continuity of the Debtors' specialty mobile device distribution and services

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Motion.

business as a going concern.  Twenty-six (26) of these investors expressed sufficient interest in the Debtors' assets to execute non-disclosure agreements and conduct preliminary due diligence for a possible transaction.  The Debtors, working in tandem with BGSA and their financial advisors, Richter Consulting, Inc. ("Richter"), provided a substantial range of data detailing all aspects of the Debtors' business to potential bidders.

3.      Over the course of a search process running from February through the middle of June 2013, BGSA ultimately solicited six (6) bids for the Debtors' assets, five of which were in writing, and one of which was made verbally but never reduced to writing.  During this time, the Debtors also sought advice on the prospects for a "naked" auction of their assets without the presence of a stalking horse bidder, as well as the possibility of a credit bid by the Debtors' pre-petition secured lenders.

4.      Having considered all of these alternatives in consultation with their legal and financial advisors, including BGSA, the Debtors determined that the bid submitted by Quality One Wireless, LLC ("Quality One"), an Orlando, Florida-based wireless equipment and service provider, was the highest and best bid and represented the best overall value for the Debtors' assets.  The Debtors thereafter, on June 24, 2013, executed a term sheet with Quality One which outlined the terms of a purchase of substantially all of the Debtors' assets by Quality One.  As part of the proposed transaction, Quality One also agreed to serve as stalking horse bidder under the terms of a definitive Asset Purchase Agreement ("Agreement") attached as Exhibit A to the Bidding Procedures.  A number of other potential bidders previously identified in the search process have continued to express interest in the Debtor's assets, and the Debtors anticipate that one or more of these bidders will participate in the auction bidding proposed by the Debtors in their Motion.

**Bidding Procedures**

5. In order to facilitate a competitive bidding process, the Debtors, with the assistance of BGSA and Richter, developed the Bidding Procedures, which will provide for a transparent and accessible bidding and sale process by providing a framework for the receipt, analysis, and incremental improvement of bids for the purchase of substantially all of the Debtors' assets. Based on my knowledge and experience, I believe the Bidding Procedures will help maximize the value of the Debtors' assets for the benefit of all stakeholders.

6. The Bidding Procedures are intended to facilitate a fair and efficient competitive bidding process for substantially all of the Debtors' assets, consistent with the timeline of these cases, to enable the Debtors to promptly identify the highest or otherwise best offer for their assets. The Bidding Procedures are attached as Exhibit A to the Bidding Procedures Order, and are not restated in their entirety herein. In general terms, however, the Bidding Procedures establish or include provisions for the following, among other things:

(i) The Debtors' intention to provide a copy of the Agreement and Bidding Procedures to all potentially interested parties (*see* Bid Procedures, at preamble);

(ii) The Debtors' intention to provide any potential bidder who executes and delivers a Non-Disclosure Agreement with access to due diligence or additional information as may be reasonably requested by the potential bidder that the Debtors, in their business judgment, determine to be reasonable and appropriate, as well as the requirements potential bidders must satisfy to participate in the bidding process and become "Qualified Bidders" and the necessary terms and conditions of a "Qualified Bid." Qualified Bids must be received prior to September 26, 2016, and must include, among other things, a proposed purchase agreement, evidence of the Bidder's access to financing sufficient to allow the Debtors to make a determination as to such Qualified Bidder's financial and other capabilities to consummate the transaction (*See* Bidding Procedures, ¶ 3);

(iii) The requirement that the sale of the Purchased Assets be on an "as is, where is" basis" and without representations and warranties of any kind by the Debtors except to the extent set forth in the applicable agreement of the Successful Bidder(s) as approved by the Bankruptcy Court (*See* Bidding Procedures, ¶ 7);

4

(iv) The procedures for conducting the Auction, in the event that more than one Qualified Bid is submitted, and the manner in which Qualified Bids will be evaluated by the Debtors in order to identify the Successful Bid (*See* Bidding Procedures, ¶ 8);

(v) Various other matters relating to the Sale process generally, including the designation of the Back-Up Bid, payment of the Bid Protections (if necessary) and certain reservations of rights by the Debtors (*See* Bidding Procedures, ¶¶ 8(a)-(k), 10, 12,13).

7. Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize sale value, and as such, do not impair the Debtors' ability to consider all qualified bid proposals.

8. In my opinion, the Bidding Procedures establish reasonable "ground rules" to ensure an orderly and competitive bidding process open to all interested and financially capable parties to maximize sale value in as expeditious a manner as possible, with due regard for the Debtors' fiduciary obligations to their estates and applicable requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the Eastern District of New York, and Administrative Order No. 557 of the United States Bankruptcy Court for the Eastern District of New York governing the sale of estate under section 363 of the Bankruptcy Code. I understand, upon the advice of counsel, that the Bidding Procedures are consistent with those regularly approved by courts in this district under similar circumstances.

## Bid Protections

9. The Debtors have determined, in their reasonable business judgment, that a sale of substantially all of their assets at this time as a going concern is warranted and necessary in the best interests of the estates, creditors, and all interested stakeholders. To this end, as a result of the extensive marketing process undertaken by BGSA, and following careful review and analysis

5

of each submitted bid, the Debtors have negotiated the Agreement whereby Quality One will serve as Stalking Horse bidder in connection with the anticipated Auction. The Debtors, in consultation with their legal and financial advisors, have determined that the identification of the Stalking Horse bidder and the negotiation of the Agreement in advance of the Auction will enhance the potential value of the Purchased Assets, and by extension, of the Debtors' estates. As set forth in the Bidding Procedures, however, the Debtors remain free to entertain, evaluate, and ultimately accept higher and better bids for the Purchased Assets.

10. Accordingly, the Debtors have requested authority, in the exercise of their business judgment, to offer Bid Protections to the Stalking Horse in the form of (a) the Break-Up Fee, in the amount of $4,250,000, and (b) the Reimbursement Amount for itemized expenses, which amount is capped at $1,000,000. In addition, the Debtors have agreed to forfeiture of some or all of the escrow deposit in the mount of $2,500,000 as liquidated damages.

11. In my opinion, the benefit to the Debtors' estates of the Bid Protections exceeds the cost of such Bid Protections. Quality One invested significant time and resources into evaluating a possible transaction involving the Debtors' assets, and thereafter in negotiating the Agreement with the Debtors. The Bid Protections were and are a material inducement to Quality One's willingness to serve as Stalking Horse under the terms of the Agreement and in connection with the Auction of the Debtors' Assets. Based on my experience in marketing the Debtors' assets to potential bidders, I believe that the Stalking Horse would not have expended the extensive due diligence efforts necessary to evaluate the Debtors' assets and enter into the Agreement subject to higher and better offers without the ability to recover its costs in the event another bidder is ultimately deemed the Successful Bidder at the Auction.

6

12. In my opinion, the existence of the Stalking Horse bid offers significant value to the Debtors' estates. First and foremost, the presence of the Stalking Horse establishes a minimum floor bid from a committed buyer for the purchase of substantially all of the Debtors' assets. The Stalking Horse bid thus offers assurance to the Debtors' contractual counterparties, vendors and customers, employees, and business contacts that the Debtors' business will continue as a going concern. As described in the First Day Declaration, the Debtors operate as intermediaries in the global supply chain for wireless communication devices. The nature of the business is such that a significant portion of the value in the estates lies in the Debtors' established network of relationships and contractual arrangements within this supply chain. I know from experience that the assurance of stability and continued operation provided by the existence of the Stalking Horse bid is of critical importance in preserving the value in a business like the Debtors'. Second, the presence of a committed buyer sends an unmistakable signal to the market that the Debtors' assets have real value and are worth owning. While this benefit may seem intangible, in my experience the identification of a Stalking Horse bidder yields a real and substantial benefit in the form of increased likelihood that the assets will be sold for the highest price and on the best possible terms.

13. Moreover, it is my opinion that the Bid Protections seem reasonable relative to the size and complexity of this transaction and appropriate and warranted under the circumstances present.

14. Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: August 22, 2013                                      */s/ David Saperstein*
                                                            David Saperstein