# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| PERSONAL COMMUNICATIONS DEVICES, LLC, *et al.*,[1] | Case No.    13-74303 (AST)<br>13-74304 (AST) |
| Debtors. | |

### FIRST AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
Tel:  (212) 813-8800
Fax:  (212) 355-3333
Emanuel C. Grillo
Matthew L. Curro
Christopher Newcomb


-and-


TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
Tel:  (212) 594-5000
Frank A. Oswald
David A. Paul
Leo Muchnik

*Co-Counsel to the*
*Debtors and Debtors in Possession*

PERKINS COIE LLP
30 Rockefeller Plaza
22nd Floor
New York, New York 10112
Tel:  (212) 262-6900
Fax:  (212) 977-1636
Schuyler Carroll
Tina N. Moss
Gary F. Eisenberg


*Counsel to the*
*Official Committee of Unsecured  Creditors*

---

[1]    The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are:  Personal Communications Devices, LLC, a Delaware limited liability company (4171) and Personal Communications Devices Holdings, LLC, a Delaware limited liability company (4096).  The Debtors' mailing address is 80 Arkay Drive, Hauppauge, Suffolk County, NY 11788.

## TABLE OF CONTENTS

**Page**

ARTICLE 1 DEFINITIONS AND INTERPRETATION ................................................................ 1

    1.1    Defined Terms ........................................................................... 1

    1.2    Interpretation ............................................................................. 9

ARTICLE 2 PROVISIONS FOR THE ALLOWANCE AND PAYMENT OF UNCLASSIFIED CLAIMS – ADMINISTRATIVE AND PRIORITY TAX CLAIMS ............................................ 9

    2.1    Administrative Claims ................................................................ 9

    2.2    Administrative Claim Bar Date ................................................. 10

    2.3    Priority Tax Claims .................................................................. 10

ARTICLE 3 CLASSIFICATION OF CLAIMS AND INTERESTS ......................................... 11

ARTICLE 4 IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND INTERESTS 12

ARTICLE 5 PROVISIONS FOR TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ...................................................................................................... 12

    5.1    Class 1 - Allowed Priority Claims ............................................ 12

    5.2    Class 2 – Allowed Miscellaneous Secured Claims ..................... 12

    5.3    Class 3 – Convenience Claims ................................................... 13

    5.4    Class 4a – Allowed General Unsecured Claims Against PCD LLC ............................. 13

    5.5    Class 4b – Allowed General Unsecured Claims Against Holdings .............................. 14

    5.6    Class 5 – Intercompany Claims ................................................. 14

    5.7    Class 6a and Class 6b –Equity Interests ..................................... 14

ARTICLE 6 ACCEPTANCE OR REJECTION OF PLAN AND ELECTIONS ON BALLOTS 14

    6.1    Classes Entitled to Vote ............................................................ 15

    6.2    Classes Not Entitled to Vote ..................................................... 15

    6.3    Classes of Claims and Interests Deemed to Reject this Plan ........ 15

    6.4    Acceptance by an Impaired Class .............................................. 15

    6.5    Nonconsensual Confirmation .................................................... 15

ARTICLE 7 PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 15

    7.1    Timing of Distributions. ........................................................... 15

    7.2    Delivery of Distributions. ......................................................... 16

    7.3    Allocation of Plan Distributions Between Principal and Interest .................. 16

    7.4    Means of Cash Payment. ........................................................... 16

    7.5    Unclaimed Distributions. .......................................................... 16

    7.6    Record Date .............................................................................. 17

7.7     Distributions After Effective Date ............................................................... 17

7.8     Distributions After Allowance ..................................................................... 17

7.9     Fractional Cents........................................................................................... 17

7.10    Third Party Agreements; Subordination ...................................................... 17

7.11    Certificate of Completion of Distributions .................................................. 17

ARTICLE 8 MEANS FOR IMPLEMENTATION OF THIS PLAN .......................................... 18

8.1     Intercompany Claims / Guarantees. ............................................................. 18

8.2     Settlement of Certain Claims. ...................................................................... 18

8.3     Implementing Actions .................................................................................. 18

8.4     Limited Liability Company Action .............................................................. 18

8.5     Sources for Plan Distributions..................................................................... 20

8.6     Conditions to Plan Effectiveness.................................................................. 20

8.7     Waiver of Conditions ................................................................................... 20

8.8     Satisfaction of Conditions ........................................................................... 20

8.9     Limited Liability Company Authorization.................................................... 21

8.10    No Agency Relationship, Limitation of Liability of Liquidating Trustee, Indemnification and Insurance ................................................................................. 21

8.11    Dissolution of the Committee ...................................................................... 21

8.12    Causes of Action ......................................................................................... 22

8.13    Special Provision Regarding Unimpaired Claims......................................... 22

8.14    Closing of the Debtors' Chapter 11 Cases ................................................... 22

8.15    No Effect on Payments to Prepetition Secured Lenders ............................... 23

ARTICLE 9 LIQUIDATING TRUST........................................................................................ 23

9.1     Execution of the Liquidating Trust Agreement............................................. 23

9.2     Duties and Powers of the Liquidating Trustee ............................................. 23

9.3     Establishment of the Liquidating Trust ........................................................ 23

9.4     Trust Distributions....................................................................................... 23

9.5     Duration of Trust ......................................................................................... 24

9.6     Liquidation of Causes of Action .................................................................. 24

9.7     Liquidating Trustee ..................................................................................... 24

9.8     Federal Income Taxation of Liquidating Trust ............................................ 28

9.9     No Revesting of Assets ................................................................................ 28

9.10    Preservation of Causes of Action; Settlement of Causes of Action.............. 28

9.11    Effectuating Documents; Further Transactions............................................. 29

ii

ARTICLE 10 TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................................................................................................................. 29

10.1    Contracts and Leases Not Specifically Assumed and Assigned are Rejected ............... 29

10.2    Bar Date for Filing Claim For Rejection Damages ......................................................... 30

10.3    Retiree Benefits .............................................................................................................. 30

ARTICLE 11 PROVISIONS REGARDING TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS ................................................................................... 30

11.1    Objections to and Resolution of Disputed Claims ......................................................... 30

11.2    No Distributions Pending Allowance ............................................................................. 31

11.3    Estimation of Claims ...................................................................................................... 31

11.4    No Post-Effective Date Interest ..................................................................................... 31

ARTICLE 12 EFFECTS OF CONFIRMATION OF THIS PLAN ............................................ 31

12.1    Discharge of the Debtors ................................................................................................ 31

12.2    Exculpation and Release of Debtors, Committee and Professionals. ............................. 31

12.3    Injunction Enjoining Holders of Claims Against the Debtors ....................................... 32

ARTICLE 13 RETENTION OF JURISDICTION ..................................................................... 32

13.1    Claims and Actions ........................................................................................................ 32

13.2    Retention of Additional Jurisdiction ............................................................................. 33

ARTICLE 14 NOTICE PROVISIONS ...................................................................................... 34

14.1    Notices ............................................................................................................................ 34

14.2    Limitation on Notice ...................................................................................................... 35

ARTICLE 15 MISCELLANEOUS PROVISIONS ................................................................... 36

15.1    Exemption from Certain Transfer Taxes ........................................................................ 36

15.2    Setoffs/Counterclaims .................................................................................................... 36

15.3    Plan Supplement ............................................................................................................. 36

15.4    Amendment or Modification of this Plan ....................................................................... 37

15.5    Revocation and Withdrawal of this Plan ........................................................................ 37

15.6    Severability ..................................................................................................................... 37

15.7    Binding Effect ................................................................................................................ 37

15.8    No Liability for Solicitation ........................................................................................... 38

15.9    Injunctions or Stays ........................................................................................................ 38

15.10    Business Days ............................................................................................................... 38

15.11    Governing Law ............................................................................................................. 38

15.12    Withholding and Reporting Requirements ................................................................... 38

15.13    Headings ....................................................................................................................... 38

15.14   Exhibits ................................................................................................................. 39

15.15   Filing of Additional Documents ............................................................................ 39

15.16   Enforcement of Confirmation Order ...................................................................... 39

Personal Communications Devices, LLC and Personal Communications Devices Holdings, LLC, as debtors and debtors in possession (each a "*Debtor*" and, collectively, the "*Debtors*") and the Official Committee of Unsecured Creditors of the Debtors (the "*Committee*", and together with the Debtors, the "*Plan Proponents*") propose the following first amended chapter 11 plan of liquidation pursuant to section 1121(a) of title 11 of the United States Code:

## ARTICLE 1
## DEFINITIONS AND INTERPRETATION

1.1    Defined Terms.

The following terms, when capitalized, shall have the meanings specified below, and such meanings shall be equally applicable to the singular and plural forms of such terms.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1.1    "*Administrative Claim*" shall mean, and be the collective reference to, all costs and expenses of administration of the Chapter 11 Cases with priority under section 507(a)(2) of the Bankruptcy Code, including, without limitation, costs and expenses allowed under section 503(b) of the Bankruptcy Code, the actual and necessary costs and expenses of preserving the Estates of the Debtors, any Professional Fee Claim and any fees or charges assessed against the Estates of the Debtors under 28 U.S.C. § 1930.

1.1.2    "*Administrative Claim Bar Date*" means the deadline for filing requests for payment of Administrative Claims established pursuant to Section 2.2 of this Plan.

1.1.3    "*Allowed Claim or Interest*" shall mean a Claim or Interest (i) which has been scheduled by the Debtors pursuant to Bankruptcy Rule 1007 and (a) is not scheduled as disputed, contingent or unliquidated, (b) as to which no Proof of Claim or Proof of Interest has been filed and (c) as to which no objection to such scheduled Claim has been filed; (ii) as to which a timely Proof of Claim or Interest has been filed as of the applicable Bar Dates and no objection thereto has been made; or (iii) that has been allowed by a Final Order.  An Allowed Claim shall not include interest accrued subsequent to the Petition Date on the amount of any Claim except with respect to an Allowed Miscellaneous Secured Claim as permitted by section 506(b) of the Bankruptcy Code or as specifically provided in this Plan or by Final Order of the Court.

1.1.4    "*Assets*" means all assets of the Debtors of any nature whatsoever including, without limitation, all property of the Estates pursuant to section 541 of the Bankruptcy Code, Cash (including proceeds from the Sale), Causes of Action, accounts receivable, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of all of the foregoing.

1.1.5    "*Asset Purchase Agreement*" means the *Asset Purchase Agreement By and Among PCD, PCD Holdings, Q1W Newco, LLC and Quality One Wireless, LLC, dated as of August 19, 2013,* as amended and as approved under and subject to the Sale Order.

1.1.6  "*Available Cash*" means, as of any given Distribution Date, all of the Debtors' or Liquidating Trust's Cash net of any reserve amounts, it being understood that the Liquidating Trustee shall, to the extent commercially practicable, segregate said Available Cash by source of proceeds from each Debtor and distribute such segregated Available Cash to the corresponding Holders of Allowed Claims against each corresponding Debtor as provided in this Plan.

1.1.7  "*Ballot*" means each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote as specified in Article 6 of this Plan, in connection with the solicitation of acceptances of this Plan.

1.1.8  "*Bankruptcy Code*" means title 11 of the United States Code, as now in effect or hereafter amended.

1.1.9  "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under 28 U.S.C. § 2075 and local rules of the Court.

1.1.10  "*Bar Date*" means the applicable deadlines established by the Court pursuant to the Amended Order Establishing Deadline for Filing Proofs of Claim and Directing the Form and Manner of Notice dated October 30, 2013 [Docket No. 229], for the filing of proofs of claim.  The Bar Date for all claimants other than governmental units is **January 6, 2014**.  The Bar Date for claims asserted by governmental units is **February 18, 2014**.

1.1.11  "*Business Day*" means any day, other than a Saturday, Sunday or legal holiday, as defined in Bankruptcy Rule 9006(a).

1.1.12  "*Chapter 11 Cases*" means the chapter 11 cases of the Debtors, jointly administered under Lead Case No. 13-74303 (AST), which cases are currently pending in the Court.

1.1.13  "*Case Interest Rate*" means the federal judgment rate provided in 28 U.S.C. § 1961 in effect on the Petition Date.

1.1.14  "*Cash*" means cash, cash equivalents and other readily marketable securities or instruments issued by a Person other than the Debtors, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by the banks and commercial paper of any entity, including interest accrued or earned thereon.

1.1.15  "*Causes of Action*" means, other than the Transferred Causes of Action, any and all claims, actions, adversary proceedings, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments and demands whatsoever, whether pending or not pending, known or unknown, whether or not scheduled as an asset of the Debtors, disputed or undisputed, legal or equitable, absolute or contingent, that are already pending or that have accrued or are accruing to the Debtors or the Estates, or that may be pursued derivatively by or on behalf of the Debtors or the Estates including, without limitation,

2

(a)     all rights, claims and causes of action under Chapter 5 of the Bankruptcy Code, all claims and causes of action;

(b)     all rights, claims and causes of action asserted in the case captioned *Official Committee of Unsecured Creditors v. PineBridge Vantage Capital, L.P., et al.*, Adv. Pro. No. 13-8174 (AST), pending in the Court; and

(c)     all rights, claims and causes of action asserted in the case captioned *Personal Communications Devices, LLC v. Airtyme Communications PVT. LTD., et al.*, currently pending in the Court under Adversary Proceeding Number 13-08173 (AST).

1.1.16   "***Claims Register***" shall mean the Claims Register as maintained by Epiq.

1.1.17   "***Claim***" has the meaning set forth in Bankruptcy Code section 101(5).

1.1.18   "***Class***" means a category or group of holders of Claims or Interests as designated in Article 3 of this Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

1.1.19   "***Collateral***" means any property or interest in property of the Estates subject to a Lien that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

1.1.20   "***Committee***" means the official committee of unsecured creditors appointed in the Chapter 11 Cases by the Office of the United States Trustee for the Eastern District of New York.

1.1.21   "***Confirmation Date***" means the date on which the Clerk of the Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

1.1.22   "***Confirmation Hearing***" means the hearing held by the Court to consider confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.1.23   "***Confirmation Order***" means the order of the Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code in form and substance satisfactory to the Debtors.

1.1.24   "***Confirmation***" means the entry of the Confirmation Order by the Court pursuant to section 1129 of the Bankruptcy Code.

1.1.25   "***Contingent Claim***" means any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened or been triggered as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

1.1.26  "***Convenience Claim***" means a General Unsecured Claim (a) Allowed in an amount greater than or equal to $2,000 for which the holder of such Claim elects on its Ballot to have its Claim reduced to $2,000 and treated as a Convenience Claim or (b) Allowed in an amount greater than or equal to $1,000 and less than $2,000 which Claim will be reduced to $1,000.

1.1.27  "***Court***" means the United States Bankruptcy Court for the Eastern District of New York, or such other court that may have jurisdiction over the Chapter 11 Cases.

1.1.28  "***Creditor***" means the holder of a Claim.

1.1.29  "***Disallowed***", when used with respect to a Claim, means that the Claim or applicable portion thereof has been determined by a Final Order or pursuant to this Plan to be invalid.

1.1.30  "***Disclosure Statement***" means the disclosure statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as approved, conditionally or otherwise, by the Court pursuant to section 1125 of the Bankruptcy Code.

1.1.31  "***Disputed Administrative Claim***" means every Administrative Claim, or portion thereof, which is neither an Allowed Administrative Claim nor a Disallowed Administrative Claim.

1.1.32  "***Disputed Claim***" means every Claim, or portion thereof, other than Administrative Claims, which is neither an Allowed Claim nor a Disallowed Claim.

1.1.33  "***Distribution***" means a payment of Cash required under this Plan to be distributed to the holders of Allowed Claims.

1.1.34  "***Distribution Address***" means the address set forth (i) on the Schedules filed with the Bankruptcy Court, (ii) on the books and records of the Debtors or their agents, or (iii) in a letter of transmittal by holders of an Allowed Claim or Equity Interest, unless the Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on the foregoing listed documents.

1.1.35  "***Distribution Date(s)***" means the date(s) on which the Liquidating Trustee determines that Distributions to holders of Allowed Claims should be made under this Plan.

1.1.36   "***Effective Date***" means the first Business Day after all of the conditions set forth in Section 8.6 of this Plan have been satisfied or waived in accordance therewith.

1.1.37  "***Epiq***" means Epiq Bankruptcy Solutions, LLC, the Debtors' claims and noticing agent, whose retention was approved by the Bankruptcy Court by order dated August 21, 2013 [Docket No. 40].

1.1.38  "***Equity Interest***" or "***Interest***" means any ownership, membership or equity interest in either of the Debtors, including, without limitation, any issued, unissued,

authorized or outstanding shares of common or preferred stock or any other equity security of the Debtors, together with any warrants, options or contractual rights to purchase or acquire such interests at any time and all rights arising with respect thereto, and any and all interests in the foregoing that were in existence immediately prior to or on the Petition Date. Without limiting the foregoing, "Interest" shall include the following classes of membership interests in Personal Communications Devices Holdings, LLC:

| Class of Membership Interest | Total Units |
|---|---|
| A | 65,426,617 |
| B | 4,486,692 |
| B-1 | 2,458,707 |
| C | 18,670,000 |
| D | 5,600,001 |

1.1.39 *"Estates"* means the Debtors' estates created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

1.1.40 *"Face Amount"* means (a) with respect to any Claim for which a proof of claim is filed, an amount equal to: (i) the liquidated amount, if any, set forth therein, plus (ii) any other amount estimated by the Bankruptcy Court in accordance with section 502(c) of the Bankruptcy Code and the relevant provisions of this Plan; (b) if no proof of claim is filed and such Claim is scheduled in the applicable Debtor's schedules, the amount of the Claim scheduled as undisputed, fixed and liquidated; or (c) if a proof of claim has been filed in an unliquidated amount, or the applicable Debtor's Schedules reflect a Claim in an unliquidated amount, the amount estimated by the Debtor or the Liquidating Trustee to be the amount for which such claim may ultimately be allowed.

1.1.41 *"Final Distribution Date"* means, for the Estates, the date on which a final distribution of Net Available Funds is made to holders of Allowed Unsecured Claims under the terms of this Plan. For the Estates, the Final Distribution Date shall be a date, as determined by the Liquidating Trustee, which is after (i) the liquidation into Cash of all remaining Assets of the Liquidating Trust (other than those assets abandoned by the Debtors) and collection of other sums due or otherwise remitted or returned to the Liquidating Trust, and (ii) all Cash in the Reserves have been distributed or made available as Net Available Funds in accordance with this Plan.

1.1.42 *"Final Order"* means an order or judgment of the Court or any other court of competent jurisdiction that has not been reversed, vacated, or stayed, and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired, and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that the

5

possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being or becoming a Final Order.

1.1.43  "**General Unsecured Claim**" or "**Unsecured Claim**" means any Claim that is not a Secured Claim, Administrative Claim, Priority Tax Claim or other Priority Claim.

1.1.44  "**Holdings**" means Personal Communications Devices Holdings, LLC.

1.1.45  "**Impaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.1.46  "**Initial Distribution Date**" means the date, after satisfaction in full of all Allowed Administrative Claims, U.S. Trustee Fees, Allowed Priority Tax Claims, Allowed Priority Claims and Allowed Miscellaneous Secured Claims, as well as reserving in full for all Disputed Claims and Post-Effective Date Costs, as determined by the Liquidating Trustee, when the first Distributions to holders of Allowed Claims are to be made under this Plan; *provided*, *however*, that the Initial Distribution Date may also be the Final Distribution Date if so determined by the Liquidating Trustee.

1.1.47  "**Intercompany Claim**" means any Claim held by a Debtor against another Debtor.

1.1.48  "**Interestholder**" means the holder of an Equity Interest.

1.1.49  "**Lien**" means a charge against, a security interest in or encumbrance upon property of the Debtors to secure payment of a debt or performance of an obligation.

1.1.50  "**Liquidating Trust**" means the trust established on the Effective Date pursuant to Article 9 hereof.

1.1.51  "**Liquidating Trust Agreement**" means that certain [Declaration of Trust] to be executed as of the Effective Date establishing the Liquidating Trust pursuant to the Plan in substantially the form to be included in the Plan Supplement.

1.1.52  "**Liquidating Trust Assets**" shall have the meaning ascribed in Section 9.3 hereof.

1.1.53  "**Liquidating Trust Oversight Committee**" means the committee comprised of the following three (3) persons: [_____].[2]

1.1.54  "**Liquidating Trustee**" means the Person appointed by the Liquidating Trust Oversight Committee pursuant to Article 9 hereof to act as trustee of and administer the Liquidating Trust.

---

[2] To be determined and disclosed in the Plan Supplement.  Notwithstanding anything to the contrary in this Plan, the Committee shall select the initial three members of the Liquidating Trust Oversight Committee.

ACTIVE/71480038.6

1.1.55  "***Liquidating Trustee Professionals***" means the agents, financial advisors, attorneys, consultants, independent contractors, representatives, and other professionals of the Liquidating Trustee (in their capacities as such).

1.1.56  "***Miscellaneous Secured Claim***" or "***Secured Claim***" means any Claim that is secured by a Lien on Collateral, to the extent such lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and only to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff; *provided* that to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as an Unsecured Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.1.57  "***Net Proceeds***" means such amounts collected from the sale or liquidation of Assets after payment of all costs and expenses of such sale or liquidation, including, without limitation, attorneys' fees.

1.1.58  "***PCD LLC***" means Personal Communications Devices, LLC.

1.1.59  "***Person***" means an individual, a corporation, a partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a government or any agency or subdivision thereof or any other entity.

1.1.60  "***Petition Date***" means August 19, 2013.

1.1.61  "***Plan***" means this first amended chapter 11 plan of liquidation, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be altered, amended, or modified from time to time.

1.1.62  "***Plan Proponents***" means, collectively, the Debtors and the Committee.

1.1.63  "***Plan Supplement***" means the supplement or supplements to this Plan containing certain documents relevant to the implementation of this Plan, to be filed in accordance with Section 15.2 hereof.

1.1.64  "***Prepetition Secured Lenders***" means the lenders party to the following credit agreements:

(a)      Amended and Restated Credit Agreement, dated as of May 14, 2012 (as amended, modified or supplemented from time to time, among PCD, as borrower, the guarantors thereto, and JPMorgan Chase Bank, N.A., as Administrative Agent, Wells Fargo Capital Finance, LLC as Syndication Agent, Bank of America, N.A., as Documentation Agent, and the lenders thereto; and

ACTIVE/71480038.6

(b)    Amended and Restated Second Lien Credit Agreement, dated as of May 14, 2012 (as amended, modified and supplemented from time to time), among PCD, as Borrower, the loan guarantors party thereto, the Lenders party thereto, and U.S. Bank National Association, as Administrative Agent, and the lenders thereto.

1.1.65    "*Priority Claim*" means any claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

1.1.66    "*Priority Tax Claim*" means any Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.1.67    "*Pro Rata*" means the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

1.1.68    "*Professional Fee Claim*" means any Administrative Claim for professional fees, expenses and other reimbursable costs incurred by Professionals under section 503(b) of the Bankruptcy Code entitled to priority under section 507(a)(2) of the Bankruptcy Code for expenses incurred and services rendered, subject to award under section 330 of the Bankruptcy Code.

1.1.69    "*Post-Effective-Date Budget*" means the budget prepared jointly by Richter Consulting, Inc. and FTI Consulting, Inc. for the thirteen (13) week period following the anticipated Effective Date of the Plan.

1.1.70    "*Post-Effective-Date Costs*" means the amounts necessary to complete the administration of the Chapter 11 Cases after the occurrence of the Effective Date, as set forth in the Post-Effective-Date Budget.

1.1.71    "*Professionals*" means those Persons retained pursuant to an order of the Court in accordance with sections 327, 328 and 1103 of the Bankruptcy Code.

1.1.72    "*Quality One*" means, collectively, Q1W Newco, LLC and Quality One Wireless, LLC.

1.1.73    "*Sale*" means the sale to Quality One of substantially all of the Debtors' assets under the Asset Purchase Agreement and pursuant to the Sale Order.

1.1.74    "*Sale Order*" means the *Order Authorizing and Approving (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims and Encumbrances and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases to the Successful Bidder*, entered by the Court on October 17, 2013, approving the sale of substantially all of the assets of the Debtors under the Asset Purchase Agreement and granting related and other relief.

1.1.75    "*Schedules*" means the schedules of assets and liabilities, and the statement of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

8

1.1.76  "***Substantial Consummation***" means the satisfaction of the requirements set forth in section 1101(2) of the Bankruptcy Code.

1.1.77  "***Tax Code***" means the Internal Revenue Code of 1986, as amended.

1.1.78  "***Transferred Causes of Action***" means any and all of the Debtors' Causes of Action which were transferred to Quality One in accordance with the Sale Order and Asset Purchase Agreement.

1.1.79  "***U.S. Trustee Fees***" means all fees and charges assessed against the Estates by the United States Trustee and due pursuant to 11 U.S.C. § 1930.

1.1.80  "***Unimpaired***" means, when used with reference to a Claim or Interest, a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.1.81  "***Unliquidated Claim***" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is asserted or sought to be estimated.

1.2    Interpretation.

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and neuter.  Unless otherwise specified, all section, article, schedule or exhibit references in this Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, this Plan.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan.  The word "including" shall mean "including, without limitation." The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Plan.

## ARTICLE 2
## PROVISIONS FOR THE ALLOWANCE AND PAYMENT OF UNCLASSIFIED CLAIMS – ADMINISTRATIVE AND PRIORITY TAX CLAIMS

2.1    Administrative Claims

2.1.1    Except as otherwise provided herein, and subject to the requirements of this Plan, on, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date an Administrative Claim becomes an Allowed Administrative Claim or (b) the date that is ninety (90) days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, a holder of an Allowed Administrative Claim shall receive, to be paid out of the Liquidating Trust, in full and final satisfaction, settlement and release of and in exchange for such Allowed Administrative Claim, (x) Cash equal to the unpaid portion of such Allowed Administrative Claim or (y) such other treatment as to which such holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing;

9

*provided*, *however*, that Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto (i) prior to the Effective Date, by the Debtors and (ii) subsequent to the Effective Date, by the Liquidating Trustee.  Administrative Claimholders will be paid in full on account of their Claims and are not entitled to vote on the Plan.

      2.1.2    <u>U.S. Trustee Fees</u>.  Quarterly fees owed to the Office of the U.S. Trustee shall be paid when due in accordance with applicable law and the Liquidating Trustee shall continue to file reports to show the calculation of such fees for the Estates until the Chapter 11 Cases are closed under section 350 of the Bankruptcy Code.

      2.1.3    <u>Professional Fee Claims</u>.  Each holder of a Professional Fee Claim seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to sections 330, 331 and 503(b)(2) of the Bankruptcy Code shall (i) file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is sixty (60) days after the Effective Date or such other date as may be fixed by the Court and (ii) if granted such an award by the Court, be paid in Cash in such amounts as are Allowed by the Court (A) on the date such Professional Fee Claim becomes an Allowed Professional Fee Claim, or as soon thereafter as is practicable or (B) upon such other terms as may be mutually agreed upon between such holder of a Professional Fee Claim and the Liquidating Trustee.  Objections to Professional Fee Claims must be filed no later than twenty-five (25) days after the filing of the subject final fee application.

    2.2    <u>Administrative Claim Bar Date</u>

      Except as provided above in Sections 2.1.2 and 2.1.3 for (i) U.S. Trustee Fees and (ii) Professionals requesting compensation or reimbursement for Professional Fee Claims, respectively, requests for payment of Administrative Claims must be filed no later than forty-five (45) days after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court.  **Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such requests by the Administrative Claim Bar Date, shall be forever barred from asserting such Claims against the Debtors, their property, the Liquidating Trust, or the Liquidating Trust's property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Claim.**

    2.3    <u>Priority Tax Claims</u>

      Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Distribution Date, a holder of an Allowed Priority Tax Claim shall be entitled to receive, to be paid out of the Liquidating Trust, in full and final satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim, (i) regular installment Cash payments, occurring not less frequently than quarterly over a period not exceeding five (5) years after the Petition Date, in an aggregate principal amount equal to the unpaid portion of such Allowed Priority Tax

ACTIVE/71480038.6

Claim, plus interest on the unpaid portion thereof at the Case Interest Rate from the Effective Date through the date of payment thereof or (ii) such other treatment as to which such holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing; *provided*, *however*, that the Liquidating Trustee shall have the right to pay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty. Notwithstanding the foregoing, or anything to the contrary in the Plan, no Distributions shall be made to the holder of any Allowed Priority Tax Claims unless (a) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Administrative Claims; and (b) either (i) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Priority Tax Claims or (ii) the Liquidating Trust Oversight Committee consents to all or any portion of such Distribution. Priority Tax Claimholders will be paid in full on account of their Claims and are not entitled to vote on the Plan.

## ARTICLE 3
## CLASSIFICATION OF CLAIMS AND INTERESTS

Claims against and Interests in the Debtors are divided into the following Classes.

**Class 1 – Allowed Priority Claims**

**Class 2 – Allowed Miscellaneous Secured Claims**

**Class 3 – Allowed Convenience Claims**

**Class 4a – Allowed General Unsecured Claims Against PCD LLC**

**Class 4b – Allowed General Unsecured Claims Against Holdings**

**Class 5 – Intercompany Claims**

**Class 6a – Equity Interests in PCD LLC**

**Class 6b – Equity Interests in Holdings**

ACTIVE/71480038.6

## ARTICLE 4
## IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND INTERESTS

| Class | Treatment | Entitled to Vote |
|-------|-----------|------------------|
| Class 1:  Allowed Priority Claims Against PCD LLC | Unimpaired | No |
| Class 2:  Allowed Miscellaneous Secured Claims | Unimpaired | No |
| Class 3:  Allowed Convenience Claims | Impaired | Yes |
| Class 4a:  Allowed General Unsecured Claims Against PCD LLC | Impaired | Yes |
| Class 4b:  Allowed General Unsecured Claims Against Holdings | Impaired | Yes |
| Class 5:  Intercompany Claims | Impaired | No |
| Class 6a:  Equity Interests in PCD LLC | Impaired | No |
| Class 6b:  Equity Interests Holdings | Impaired | No |

## ARTICLE 5
## PROVISIONS FOR TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

5.1     Class 1 - Allowed Priority Claims.

On, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a Priority Claim becomes an Allowed Priority Claim or (b) the date that is ninety (90) days after the date on which such Priority Claim becomes an Allowed Priority Claim, a holder of an Allowed Priority Claim against PCD LLC shall receive, to be paid out of the Liquidating Trust, in full and final satisfaction, settlement and release of and in exchange for such Allowed Priority Claim, (i) Cash equal to the unpaid portion of such Allowed Priority Claim or (ii) such other treatment as to which such holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing.  Notwithstanding the foregoing, or anything to the contrary in the Plan, no Distributions shall be made to the holder of any Allowed Priority Claims unless (a) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Administrative Claims and Priority Tax Claims; and (b) either (i) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Priority Tax Claims or (ii) the Liquidating Trust Oversight Committee consents to all or any portion of such Distribution.  Class 1 is conclusively presumed to have accepted the Plan and, therefore, holders of Class 1 Claims are not entitled to vote to accept or reject the Plan.

5.2     Class 2 – Allowed Miscellaneous Secured Claims.

Provided that the holder of a Class 2 Claim has not previously been paid by the Debtors or accepted other consideration in exchange for such Class 2 Claim, on, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim or (b) the date

12

that is ninety (90) days after the date on which such Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim, a holder of an Allowed Miscellaneous Secured Claim against PCD LLC shall receive, in full and final satisfaction, settlement and release of and in exchange for, such Allowed Miscellaneous Secured Claim, (i) Cash equal to the unpaid portion of such Allowed Miscellaneous Secured Claim, to be paid out of the Liquidating Trust, (ii) a return of the holder's Collateral securing the Miscellaneous Secured Claim or (iii) such other treatment as to which such holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing. Any holder of a Miscellaneous Secured Claim shall retain its Lien in the Collateral or the proceeds of the Collateral (to the extent that such Collateral is sold by the Debtors or the Liquidating Trustee free and clear of such Lien) to the same extent and with the same priority as such Lien held as of the Petition Date until such time as (a) the holder of such Miscellaneous Secured Claim (i) has been paid Cash equal to the value of its Allowed Miscellaneous Secured Claim, (ii) has received a return of the Collateral securing the Miscellaneous Secured Claim or (iii) has been afforded such other treatment as to which such holder and the Debtors and/or the Liquidating Trustee shall have agreed upon in writing; or (b) such purported Lien has been determined by an order of the Bankruptcy Court to be invalid or otherwise avoidable. Notwithstanding the foregoing, or anything to the contrary in the Plan, no Distributions shall be made to the holder of any Allowed Miscellaneous Secured Claim unless either (a) the Liquidating Trust has sufficient Available Cash to pay, or reserve for, as the case may be, the Face Amount of all Miscellaneous Secured Claims or (b) the Liquidating Trust Oversight Committee consents to all or any portion of such Distribution.  Class 2 is conclusively presumed to have accepted the Plan and, therefore, holders of Class 2 Claims are not entitled to vote to accept or reject the Plan.

### 5.3    Class 3 – Convenience Claims

Provided that the Face Amounts of all Administrative Claims, Priority Tax Claims, Priority Claims and Miscellaneous Secured Claims have been paid in full or, to the extent not paid in full, funds sufficient to satisfy, in the aggregate, the Face Amount of all such Claims have been placed in a segregated reserve, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after, the Initial Distribution Date, (i) each holder of an Allowed Convenience Claim in the amount of $2,000 shall receive from the Liquidating Trustee, in full and final satisfaction, settlement and release of and in exchange for such Convenience Claim, Cash in the amount of $300 and (ii) each holder of an Allowed Convenience Claim in the amount of $1,000 shall receive from the Liquidating Trustee, in full and final satisfaction, settlement and release of and in exchange for such Convenience Claim, Cash in the amount of $100. Class 3 is Impaired and is entitled to vote on the Plan.

### 5.4    Class 4a – Allowed General Unsecured Claims Against PCD LLC

Provided that the Face Amounts of all Administrative Claims, Priority Tax Claims, Priority Claims and Miscellaneous Secured Claims have been paid in full or, to the extent not paid in full, funds sufficient to satisfy the Face Amount of all such Claims have been placed in a segregated reserve, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after, the earlier of (a) the Distribution Date immediately following the date a General Unsecured Claim becomes an Allowed General Unsecured Claim or (b) the date that is ninety (90) days after the date on which such General Unsecured Claim becomes an

Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim against PCD LLC shall receive from the Liquidating Trustee, in full and final satisfaction, settlement and release of and in exchange for such Allowed General Unsecured Claim, its Pro Rata share of Available Cash to be distributed to holders of Allowed General Unsecured Claims.  More than one Distribution Date may occur, as the Liquidating Trustee shall determine in its reasonable discretion.  Class 4a is Impaired and is entitled to vote on the Plan.

No Cash payment shall be made on account of Allowed General Unsecured Claims Against PCD LLC until Cash sufficient to pay all estimated Administrative Claims, Disputed Claims, and Post-Effective Date Costs has been deposited into such reserves as the Debtors or the Liquidating Trustee deem necessary.

Allowed General Unsecured Claims will not include interest from and after the Petition Date or include any penalty on such Claim.  Any such interest or penalty component of any such Claim, if Allowed, will be paid only in accordance with section 726(b) of the Bankruptcy Code as if these Chapter 11 Cases were cases under chapter 7.

5.5     Class 4b – Allowed General Unsecured Claims Against Holdings

Provided that the Face Amount of all Allowed General Unsecured Claims against PCD LLC has been paid in full or, to the extent not paid in full, funds sufficient to satisfy the Face Amount of all such Claims have been placed in a segregated reserve, and subject to the occurrence of the Effective Date, on, or as soon as reasonably practicable after all Allowed Claims in Class 4a have been paid or properly reserved for, each holder of an Allowed General Unsecured Claim against Holdings shall receive from the Liquidating Trustee, in full and final satisfaction, settlement and release of and in exchange for such Allowed General Unsecured Claim, its Pro Rata share of Available Cash to be distributed to holders of Allowed General Unsecured Claims Against Holdings.  More than one Distribution Date may occur, as the Liquidating Trustee shall determine in its reasonable discretion.  Class 4b is Impaired and is entitled to vote on the Plan.

5.6     Class 5 – Intercompany Claims

Subject to the occurrence of the Effective Date, all Intercompany Claims shall be deemed eliminated, cancelled and/or extinguished and the holders of Class 5 Claims shall not be entitled to, and shall not receive or retain any property or interest in property on account of such Claims.  Class 5 is deemed to have rejected the Plan and, therefore, holders of Class 5 Claims are not entitled to vote to accept or reject the Plan.

5.7     Class 6a and Class 6b –Equity Interests

On the Effective Date, all Interests in Class 6a and Class 6b shall be cancelled and each holder thereof shall not be entitled to, and shall not receive or retain any property or interest in property on account of, such Interests.  Class 6 is deemed to have rejected the Plan and, therefore, holders of Interests are not entitled to vote to accept or reject the Plan.

# ARTICLE 6
## ACCEPTANCE OR REJECTION OF PLAN AND ELECTIONS ON BALLOTS

ACTIVE/71480038.6

6.1     Classes Entitled to Vote.

Class 3 (Convenience Claims), Class 4a (General Unsecured Claims Against PCD LLC) and Class 4b (General Unsecured Claims Against Holdings) are Impaired Classes under the Plan and shall be entitled to vote to accept or reject this Plan.

6.2     Classes Not Entitled to Vote.

Classes 1 and 2 are Unimpaired by this Plan.  Holders of Claims and Interests in these Classes are conclusively presumed to have accepted this Plan and are not entitled to vote to accept or reject this Plan.

6.3     Classes of Claims and Interests Deemed to Reject this Plan.

Claims in Class 5 (Intercompany Claims) and Interests in Class 6a and Class 6b are Impaired and are not expected to receive any distributions under this Plan.  Under section 1126(g) of the Bankruptcy Code, the holders of such Claims and Interests are conclusively presumed to reject this Plan, and the votes of such holders will not be solicited.

6.4     Acceptance by an Impaired Class.

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

6.5     Nonconsensual Confirmation.

If any impaired class of Claims entitled to vote does not accept this Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend this Plan in accordance with Section 15.4 of this Plan or undertake to have the Bankruptcy Court confirm this Plan under section 1129(b) of the Bankruptcy Code or both. With respect to impaired classes of Claims and Interests that are deemed to reject this Plan, the Debtors shall request that the Bankruptcy Court confirm this Plan pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE 7
## PROVISIONS GOVERNING DISTRIBUTIONS

7.1     Timing of Distributions.

7.1.1    With respect to Allowed Administrative Claims, including U.S. Trustee Fees and Professional Fee Claims, Allowed Priority Tax Claims, Allowed Priority Claims, and Allowed Miscellaneous Secured Claims, the Liquidating Trustee shall make Distributions to the holders of such Claims in accordance with Sections 2.1, 2.2, 5.1 and 5.2 of this Plan.

7.1.2    With respect to Allowed General Unsecured Claims, Distributions are to be made, subject to the provisions for Disputed Claims set forth in this Plan, by the Liquidating Trustee on the Initial Distribution Date and any subsequent Distribution Dates, to the extent Net Proceeds exist subsequent to the Initial Distribution Date.  Notwithstanding the foregoing, the Liquidating Trustee may determine to make one Distribution on account of Allowed General Unsecured Claims.

7.1.3    In respect of the Final Distribution Date, the Liquidating Trustee is not obligated to make such a Distribution if it is determined that there are insufficient Net Proceeds to make a cost-efficient Distribution, taking into account the size of the Distribution to be made and the number of recipients of such Distribution; in which event, such funds, in the Liquidating Trustee's discretion, will be donated to a reputable charitable organization chosen by the Liquidating Trustee.

7.2    Delivery of Distributions.

7.2.1    Cash Distributions by check shall be mailed to each Creditor entitled to such Distributions under this Plan at the Distribution Address.

7.2.2    If any Creditor's Distribution is returned as undeliverable, no further Distributions to such Creditor shall be made unless and until the Liquidating Trustee is notified of such Creditor's then current address, at which time all missed Distributions shall be made to such holder without interest.  Any notification of a Creditors' then current address must be received by the Liquidating Trustee within ninety (90) days after the Distribution was originally made, after which time such Creditor's Distribution shall be treated as an unclaimed Distribution in accordance with Section 7.5 of this Plan.  Nothing in this Plan shall require the Liquidating Trustee to attempt to locate any holder of an Allowed Claim.

7.3    Allocation of Plan Distributions Between Principal and Interest.

To the extent that any Allowed Claim entitled to a distribution under this Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts to the extent permitted under applicable law.

7.4    Means of Cash Payment.

Cash Distributions made pursuant to this Plan shall be in United States funds, by check drawn on a domestic bank, or, if the Liquidating Trustee so elects in its sole discretion, by wire transfer from a domestic bank.  No Cash Distribution need be made if the Distribution would be less than $15.00.

7.5    Unclaimed Distributions.

All Distributions under this Plan that are unclaimed for a period of one hundred and twenty (120) days after the distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and any entitlement of any holder of any Claims to such

ACTIVE/71480038.6

Distributions shall be extinguished and forever barred.  Subject to the conditions set forth in this Plan, any such unclaimed Distributions shall be treated as Net Available Funds for distribution in accordance with this Plan.

      7.6     <u>Record Date</u>.

The record date for purposes of Distributions under this Plan shall be the date the Court enters its order approving, conditionally or otherwise, the Disclosure Statement.  The Liquidating Trustee shall rely on the Claims Register except to the extent a notice of transfer of Claim or Interest has been filed with the Court prior to the record date pursuant to Bankruptcy Rule 3001 or the Liquidating Trustee has actual notice of a permitted transfer.

      7.7     <u>Distributions After Effective Date</u>.

Distributions made after the Effective Date to holders of Claims that become Allowed Claims after the Effective Date shall be deemed to have been made on the Effective Date.

      7.8     <u>Distributions After Allowance</u>.

To the extent that a Disputed Claim becomes an Allowed Claim or a Disputed Administrative Claim becomes an Allowed Administrative Claim, Distributions, if any, shall be made to the holder of such Allowed Claim or Allowed Administrative Claim in accordance with the provisions of this Plan.

      7.9     <u>Fractional Cents</u>.

When any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of less than $0.005 and rounding up in the case of $0.005 or more).

      7.10     <u>Third Party Agreements; Subordination</u>.

Except as set forth herein, Distributions to the various classes of Claims hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such Distributions by reason of any claimed contractual subordination rights, or otherwise.  Distributions made by the Liquidating Trustee shall not be inconsistent with such contractual subordination provisions and may be modified only by a Final Order directing that Distributions be made other than as provided in this Plan and Confirmation Order; *provided*, *however*, that the Liquidating Trustee (or any of its agents, representatives, professionals, or employees) shall not be liable to any Person on account of Distributions which are ultimately determined to be inconsistent with inter-creditor contractual subordination agreements or rights, unless such Distributions were made in bad faith or with malicious intent.

      7.11     <u>Certificate of Completion of Distributions</u>.

Upon the completion of all Distributions under this Plan, the Liquidating Trustee shall file a certificate of completion of Distributions with the Court.

ACTIVE/71480038.6

## ARTICLE 8
## MEANS FOR IMPLEMENTATION OF THIS PLAN

8.1     Intercompany Claims / Guarantees.

On the Effective Date, (i) all assets and liabilities of the Debtors shall be transferred to the Liquidating Trust and the Liquidating Trustee shall, using commercially reasonable efforts, segregate each Debtor's assets and make payments under the Plan to each Class of Claimants corresponding to each Debtor in accordance with the priorities set forth in the Bankruptcy Code, (ii) no Distributions shall be made under this Plan on account of intercompany claims among the Debtors and (iii) all guarantees of Holdings of the obligations of PCD LLC shall be eliminated so that any claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of the Debtors shall be one obligation against the Liquidating Trust corresponding to an obligation of PCD LLC.

8.2     Settlement of Certain Claims.

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, releases and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to this Plan.  All Distributions made pursuant to this Plan to Creditors holding Allowed Claims in any Class are intended to be and shall be final.

8.3     Implementing Actions.

On the Effective Date, the following shall occur to implement this Plan:

(a)     All Debtors shall be deemed dissolved without any further action by the Debtors, including the filing of any documents with the Secretary of State for any state in which the Debtors are incorporated or any other jurisdiction, or without the necessity for any payments to be made in connection therewith; *provided*, *however*, that the Debtors shall have the authority to take all necessary actions to merge or dissolve the Debtors in and withdraw the Debtors from applicable state(s); and

(b)     The members of the board of managers of each of the Debtors shall be deemed to have resigned;

(c)     Each of the Debtors shall cause (and shall be deemed to have caused) its Assets and the Assets of its Estate to be transferred to the Liquidating Trust in accordance with this Plan; and

(d)     The Liquidating Trustee shall make all Distributions required to be made on the Effective Date to holders of Allowed Claims pursuant to this Plan.

8.4     Limited Liability Company Action

(a)     *No Further Duties*

18

ACTIVE/71480038.6

Upon transfer of the Debtors' Assets to the Liquidating Trust, the Debtors shall have no further duties or responsibilities in connection with the implementation of the Plan.

(b)    *Retention of Books and Records*

As soon as practicable after the transfer of the Assets to the Liquidating Trust, the Liquidating Trustee shall provide for the retention and storage of the books, records and files that shall have been delivered to the Liquidating Trust until such time as all such books, records and files are no longer required to be retained under applicable law, including, without limitation, any law or rule imposing an obligation to retain and preserve documents, data and other information for purposes of litigation, and file a certificate informing the Bankruptcy Court of the location at which such books, records and filed are being stored.

(c)    *Cancellation of Existing Securities and Agreements*

Except as otherwise provided in the Plan, and in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, the Interests and any other promissory notes, share certificates, whether for preferred or common stock, other instruments or agreements evidencing any Claims or Interests, and all options, warrants, calls, rights, puts, awards and commitments shall be deemed cancelled and of no further force and effect with respect to the Debtors, without any further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors under the notes, share certificates, and other agreements and instruments governing such Claims and Interests shall be released; *provided* that, for the avoidance of doubt, the foregoing shall have no effect on the rights or obligations of non-Debtors with respect to other non-Debtors in connection with such contracts, instruments or other agreement or documents.

(d)    *No Further Action*

Each of the matters provided for under the Plan involving the limited liability company structure of the Debtors or limited liability company action to be taken by or required of the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by any Person, including but not limited to, the Liquidating Trust, the Liquidating Trustee, holders of Claims or Interests against or in the Debtors, or directors, officers or managers of the Debtors.

(e)    *Execution of Instruments Authorized*

The Liquidating Trustee shall be and hereby is authorized, on and after the Effective Date, to sign in the name of any Debtor (with a limited power of attorney), execute, deliver and file all documents and instruments that the Liquidating Trustee determines in its sole discretion will further the accomplishment of the transactions contemplated under this Plan.

(f)    *Post-Effective-Date Work by Debtors' Professionals*

The Professionals employed by the Debtors shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date

activities, including the preparation, filing and prosecution of Final Fee Application, upon the submission of invoices to the Liquidating Trust in accordance with the Post-Effective Date Budget.  Any time or expenses incurred in the preparation, filing and prosecution of the Final Fee Applications shall be disclosed by each Professional in its Final Fee Application and shall be subject to approval of the Bankruptcy Court.

8.5    Sources for Plan Distributions

All Cash necessary for the Liquidating Trustee to make payments of Cash pursuant to the Plan shall be obtained from the following sources:  (a) the Debtors' Cash on hand, which shall be transferred to the Liquidating Trust on the Effective Date, (b) Cash received in liquidation of the assets of the Liquidating Trust and (c) proceeds of the Causes of Action.

8.6    Conditions to Plan Effectiveness.

Notwithstanding anything herein to the contrary, this Plan may not be consummated, and the Effective Date shall not occur, unless and until each of the following conditions shall have been either satisfied or waived:

(a)    The Court has entered the Confirmation Order;

(b)    No stay of the Confirmation Order is in effect;

(c)    All documents, instruments and agreements, in form and substance satisfactory to the Debtors, provided for under or necessary to implement this Plan have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby; and

(d)    The Plan Proponents shall have received all authorizations, consents, regulatory approvals, rulings, opinions or other documents that are determined by the Plan Proponents to be necessary to implement this Plan.

8.7    Waiver of Conditions.

The Debtors and the Committee may jointly, but not severally, waive any of the conditions set forth in Section 8.6 of this Plan without notice and a hearing.  Additionally, the Debtors' rights under the "mootness doctrine" shall be unaffected by any provision hereof.  The failure to satisfy any condition may jointly be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including, without limitation, any act, action, failure to act, or inaction by the Debtors).  If the Debtors fail to assert the non-satisfaction of any such conditions, such failure shall not be deemed a waiver of any other rights thereunder.

8.8    Satisfaction of Conditions.

Except as expressly provided or permitted in this Plan, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

20

Unless otherwise agreed by the Plan Proponents, in the event that one or more of the conditions set forth in Section 8.6 of this Plan has not occurred or otherwise been waived pursuant to Section 8.7 of this Plan by the one hundred and twentieth (120th) day after entry of the Confirmation Order as a final nonappealable order, (a) the Confirmation Order shall be vacated, (b) the Debtors and all holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (c) the Debtors' obligations with respect to Claims and Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

8.9    Limited Liability Company Authorization.

Upon the Effective Date, all transactions and applicable matters provided for under this Plan shall be deemed to be authorized and approved by the Debtors without any requirement of further action by the Debtors, the Debtors' shareholders or members, or the Debtors' boards of directors, managers or other governing body.

8.10    No Agency Relationship, Limitation of Liability of Liquidating Trustee, Indemnification and Insurance.

The Liquidating Trustee and its agents shall not be deemed to be the agent for any of the creditors in connection with the Cash held or distributed pursuant to this Plan. The Liquidating Trustee and its agents shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct. The Liquidating Trustee shall be indemnified and held harmless, including the costs of defending such claims, by the Liquidating Trust against any and all claims arising out of the performance of its duties under this Plan, except to the extent its actions constitute gross negligence or willful misconduct. The Liquidating Trustee may obtain, at the expense of the Liquidating Trust, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligation of the Liquidating Trust. The Liquidating Trustee may conclusively rely, and shall be fully protected personally in acting upon, any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which it believes to be genuine and to have been signed or presented by the proper party. The Liquidating Trustee may rely upon written information previously generated by the Debtors or the Liquidating Trust.

8.11    Dissolution of the Committee.

On the Effective Date, the Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Committee's attorneys, financial advisors, and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for (i) final allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith and (ii) reimbursement of expenses incurred by the members of the Committee. All prior transfers and assignments of Assets (including without limitation any Causes of Action) from the Debtors to the Committee shall deemed to constitute, as of the

ACTIVE/71480038.6

Effective Date, transfers of such Assets (including without limitation any Causes of Action) from both the Debtors and the Committee to the Liquidating Trust. The Committee's standing to prosecute Causes of Action on behalf of the Debtors is hereby ratified. The Liquidating Trustee shall succeed to all rights of the Committee previously granted or transferred by either of the Debtors to the Committee in accordance with the Order Authorizing the Official Committee of Unsecured Creditors to Bring Certain Claims on Behalf of the Debtors' Estates [Docket No. 218].

8.12    Causes of Action.

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, as of the Effective Date, any Causes of Action that are already pending, that have accrued, or that are accruing to the Debtors shall vest in the Liquidating Trust. As of the Effective Date, the Liquidating Trustee shall have the authority and standing to prosecute such Causes of Action on behalf of and for the benefit of the Liquidating Trust and its creditors. Subject to the other provisions of this Article 8, the Liquidating Trustee shall have the authority to compromise, settle, resolve, discontinue, abandon or dismiss all such Causes of Action without approval of the Court. All cash received by the Liquidating Trust as a result of prosecution or settlement of any Causes of Action or of enforcement of any judgment or order obtained in connection with any Cause of Action shall be distributed in accordance with the terms of this Plan.

No Cause of Action is released by confirmation of this Plan, and confirmation of this Plan shall not have any *res judicata* or collateral estoppel effect on the Debtors' prosecution of any Cause of Action.

Without derogating from any of the foregoing, pursuant to section 1123(a)(5) of the Bankruptcy Code, the vesting of any Causes of Action as described in the first paragraph of this Section shall occur notwithstanding any applicable non-bankruptcy law to the contrary that otherwise might be held to limit said vesting.

8.13    Special Provision Regarding Unimpaired Claims

Except as otherwise provided in the Plan, the Confirmation Order, any other order of the Court, or any document or agreement enforceable pursuant to the terms of the Plan, nothing shall affect the rights and defenses, both legal and equitable, of the Debtors and the Liquidating Trustee with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

8.14    Closing of the Debtors' Chapter 11 Cases

When all Disputed Claims have become Allowed Claims or Disallowed Claims, all remaining Cash has been distributed in accordance with this Plan and the business and affairs of the Liquidating Trust have been otherwise wound up, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and Bankruptcy Rules.

ACTIVE/71480038.6

8.15    No Effect on Payments to Prepetition Secured Lenders

Notwithstanding anything to the contrary herein, no term or provision of this Plan or the Confirmation Order shall amend, modify, supersede or affect any payment made in connection with the Sale or in accordance with the Sale Order to any of the Debtors' Prepetition Secured Lenders.

# ARTICLE 9
# LIQUIDATING TRUST

9.1    Execution of the Liquidating Trust Agreement.

On or before the Effective Date, the Plan Proponents and the Liquidating Trustee shall execute the Liquidating Trust Agreement, and shall take all other necessary steps to establish the Liquidating Trust.  The name of the Trust shall be the "Devices Liquidating Trust."

9.2    Duties and Powers of the Liquidating Trustee.

The Liquidating Trustee, together with its representatives and professionals, shall administer this Plan with respect to the Liquidating Trust.  In such capacity, the powers of the Liquidating Trustee shall include any and all powers and authority necessary to implement this Plan and to administer and distribute the assets and wind up the business and affairs of the Debtors and the Liquidating Trust, all as is further set forth in the Liquidating Trust Agreement.

9.3    Establishment of the Liquidating Trust

The Liquidating Trust shall be established and shall become effective on the Effective Date.  All Distributions to the holders of Allowed Claims shall be from the Liquidating Trust. The Liquidating Trust shall hold and administer the following assets and the Net Proceeds thereof (collectively, the "***Liquidating Trust Assets***"):

> (a)    the Assets of the Debtors, including but not limited to the Causes of Action for liquidation and distribution in accordance with the Plan; and
>
> (b)    all other property of the Debtors and the Estates, and each of them, which shall be transferred by the Debtors to the Liquidating Trust on the Effective Date for liquidation and distribution in accordance with the Plan.

9.4    Trust Distributions

The Liquidating Trustee shall liquidate all Assets of the Liquidating Trust and distribute the Net Proceeds of such liquidation from the Liquidating Trust in accordance with this Plan and the Liquidating Trust Agreement.

ACTIVE/71480038.6

9.5     Duration of Trust

The Liquidating Trust shall have an initial term of five (5) years; *provided*, *however*, that, if warranted by the facts and circumstances, and subject to the approval of the Bankruptcy Court with jurisdiction over the case, upon a finding that an extension of the term of the Liquidating Trust is necessary to accomplish the liquidating purpose of the Liquidating Trust, the Liquidating Trust's term may be extended for a finite term based on facts and circumstances.  Each extension of the term of the Liquidating Trust must be approved by the Court within six (6) months of the beginning of the extended term.  The Liquidating Trust may be terminated earlier than its scheduled termination if (a) the Bankruptcy Court has entered a Final Order closing the Chapter 11 Cases pursuant to Bankruptcy Code section 350(a) and (b) the Liquidating Trustee has administered all assets of the Liquidating Trust and performed all other duties required by the Plan and the Liquidating Trust Agreement.  As soon as practicable after the final Distribution of Cash is made by the Liquidating Trustee, the Liquidating Trustee shall seek entry of a Final Order closing the Chapter 11 Cases pursuant to Bankruptcy Code section 350.

9.6     Liquidation of Causes of Action

Notwithstanding any other term or provision of the Plan, the Debtors (or the Committee, to the extent that, prior to the Effective Date, the Debtors assigned or otherwise transferred or shall have assigned or otherwise transferred any Causes of Action to the Committee) shall have, prior to the Effective Date, and the Liquidating Trustee shall have, on and after the Effective Date, sole authority, standing, and responsibility for investigating, analyzing, commencing, prosecuting, litigating, compromising, collecting, and otherwise administering the Causes of Action.

9.7     Liquidating Trustee

(a)     *Appointment*

The initial Liquidating Trustee shall be [_____].[3]  The appointment of the Liquidating Trustee shall be effective as of the Effective Date.  Successor Liquidating Trustee(s) shall be appointed as set forth in the Liquidating Trust.   The salient terms of the Liquidating Trustee's employment, including the Liquidating Trustee's duties and compensation (which compensation shall be negotiated by the Liquidating Trustee and the Liquidating Trust Oversight Committee) shall be set forth in the Plan Supplement and the Confirmation Order.  The Liquidating Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy proceedings.

(b)     *Term*

Unless the Liquidating Trustee resigns or dies earlier, the Liquidating Trustee's term shall expire upon termination of the Liquidating Trust pursuant to the Plan and/or the Liquidating Trust Agreement.

---

[3] To be determined and disclosed in the Plan Supplement.  Notwithstanding anything to the contrary in this Plan, the Committee shall select the initial Liquidating Trustee.

ACTIVE/71480038.6

(c)     *Powers and Duties*

The Liquidating Trustee shall have the rights and powers set forth in the Liquidating Trust Agreement including, but not limited to, the powers of a debtor-in-possession under Bankruptcy Code sections 1107 and 1108. The Liquidating Trustee shall be governed in all things by the terms of the Liquidating Trust Agreement and the Plan. The Liquidating Trustee shall administer the Liquidating Trust, and its assets, and make Distributions from the proceeds of the Liquidating Trust in accordance with the Plan. In addition, the Liquidating Trustee shall, in accordance with the terms of the Plan, take all actions necessary to wind down the affairs of the Debtors consistent with the Plan and applicable non-bankruptcy law. Without limitation, the Liquidating Trustee shall file final federal, state, foreign and, to the extent applicable, local, tax returns. Subject to the terms of the Liquidating Trust Agreement, which includes, among other things, limitations on the Liquidating Trustee's discretion to take certain action without approval of the Liquidating Trust Oversight Committee or, in some circumstances, the Bankruptcy Court, the Liquidating Trustee shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without limitation, to:

(i)     employ, retain, and replace one or more attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert witnesses, consultants, and advisors as necessary to discharge the duties of the Liquidating Trustee under the Plan and the Liquidating Trust Agreement;

(ii)    object to the allowance of Claims pursuant to the terms of the Plan;

(iii)   open, maintain and administer bank accounts as necessary to discharge the duties of the Liquidating Trustee under the Plan and the Liquidating Trust Agreement;

(iv)    pay reasonable and necessary professional fees, costs, and expenses as set forth in the Plan;

(v)     investigate, analyze, commence, prosecute, litigate, compromise, and otherwise administer the Causes of Action and all related Liens for the benefit of the Liquidating Trust and its beneficiaries, as set forth in the Plan, and take all other necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash the Causes of Action, including all receivables, and to negotiate and effect settlements and lien releases with respect to all related Claims and all related Liens;

(vi)      administer, sell, liquidate, or otherwise dispose of all Collateral and all other Assets of the Estates in accordance with the terms of the Plan;

(vii)     represent the Estates before the Bankruptcy Court and other courts of competent jurisdiction with respect to matters concerning the Liquidating Trust;

(viii)    seek the examination of any entity under and subject to the provisions of Bankruptcy Rule 2004;

(ix)      comply with applicable orders of the Bankruptcy Court and any other court of competent jurisdiction over the matters set forth herein;

(x)       comply with all applicable laws and regulations concerning the matters set forth herein;

(xi)      exercise such other powers as may be vested in the Liquidating Trust pursuant to the Liquidating Trust Agreement, the Plan, the Plan Supplement or other Final Orders of the Bankruptcy Court;

(xii)     execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Liquidating Trust; and

(xiii)    stand in the shoes of, and have full authority as the sole legal representative of, the Debtors for all purposes.

(d)    *Fees and Expenses*

Except as otherwise provided in the Plan, compensation of the Liquidating Trustee and the costs and expenses of the Liquidating Trustee and the Liquidating Trust (including, without limitation, professional fees and expenses) shall be paid from the Liquidating Trust.  The Liquidating Trustee shall pay, without further order, notice, or application to the Bankruptcy Court, the reasonable fees and expenses of the Liquidating Trustee Professionals, as necessary to discharge the Liquidating Trustee's duties under the Plan and the Liquidating Trust Agreement.  Payments to the Liquidating Trustee, or to the Liquidating Trustee Professionals, shall not require notice to any party, or an order of the Bankruptcy Court approving such payments; *provided, however*, that the Liquidating Trustee shall be entitled to payment of reasonable fees and expense incurred prior to the Effective Date in an amount to be agreed to by the Debtors and approved by the Bankruptcy Court in the Confirmation Order.

(e)    *Retention of Professionals and Compensation Procedure*

On and after the Effective Date, subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may engage such professionals and experts as may be

ACTIVE/71480038.6

deemed necessary and appropriate by the Liquidating Trustee to assist the Liquidating Trustee in carrying out the provisions of the Plan and the Liquidating Trust Agreement, including, but not limited to, Professionals retained prior to the Effective Date by either the Debtors or the Creditors' Committee.  Subject to the terms of the Liquidating Trust Agreement, for services performed from and after the Effective Date, Liquidating Trustee Professionals shall receive compensation and reimbursement of expenses in a manner to be determined by the Liquidating Trustee.

> (f)     *Liquidating Trustee as Successor*

Pursuant to Bankruptcy Code section 1123(b), the Liquidating Trustee shall be the successor to the Debtors for all purposes.

> (g)     *Compromising Claims*

Pursuant to Bankruptcy Rule 9019(b), the Plan, including specifically the limitations imposed by Section 11.1 hereof, and the Liquidating Trust Agreement, as of the Effective Date, the Liquidating Trustee is authorized to approve compromises of the Causes of Action and all Claims, Disputed Claims, and Liens and to execute necessary documents, including Lien releases and stipulations of settlement or release, without notice to any party and without further order of the Bankruptcy Court, except as otherwise provided in the Liquidating Trust Agreement.

> (h)     *Investment Powers*

The powers of the Liquidating Trustee to invest any Cash that is held by the Liquidating Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Liquidating Trust's liquidating purposes, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or treasury bills.  The Liquidating Trustee is prohibited from continuing or engaging in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Liquidating Trust.

> (i)     *Distributions*

The Liquidating Trustee shall make continuing efforts to dispose of the Liquidating Trust's assets, make timely Distributions, and not unduly prolong the duration of the Liquidating Trust.

> (j)     *Vesting of Assets*

On the Effective Date, all property or Assets treated by the Plan, including, without limitation, any minutes, and general organizational records of Debtors, and any books and records relating to the foregoing not otherwise treated by the Plan, shall vest in the Liquidating Trust free and clear of all Liens, Claims, encumbrances, and other interests and shall thereafter be administered, liquidated by sale, collection, recovery, or other disposition and

ACTIVE/71480038.6

distributed by the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and the Plan.

 9.8    Federal Income Taxation of Liquidating Trust

 (a)    *Treatment of Liquidating Trust and Asset Transfers*

 For federal income tax purposes, the Debtors, the Liquidating Trust, the Liquidating Trustee and the holders of Claims shall treat the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124. For federal income tax purposes, the transfer of assets to the Liquidating Trust under the Plan is treated as a deemed transfer by the Debtors to the holders of Claims in satisfaction of their Claims followed by a deemed transfer of the assets by the holders of Claims to the Liquidating Trust. For federal income tax purposes, the holders of Claims will be deemed to be the grantors and owners of the Liquidating Trust, and its assets and the Liquidating Trust will be taxed as a grantor trust as set forth in Sections 671 through 677 of the Tax Code (i.e., as a pass-through tax entity not subject to entity-level tax) owned by the holders of Claims. The Liquidating Trust will file federal income tax returns as a grantor trust under Section 671 of the Tax Code and Treasury Regulations Section 1.671-4 and report, but not be subject to an entity-level tax on, the Liquidating Trust's items of income, gain, loss deductions and credits for federal income tax purposes ("***Tax Items***"). The holders of Claims will report such Tax Items on their individual federal income tax returns and pay any resulting federal income tax liability. The Debtors, the Liquidating Trust and the holders of Claims will use consistent valuations of the assets transferred to the Liquidating Trust for all federal income tax purposes, such valuations to be determined jointly by the Debtors and the Liquidating Trustee.

 (b)    *Reserves that may be Established by the Liquidating Trustee*

 The Plan permits the Liquidating Trustee to create separate reserves for Disputed Claims. The Liquidating Trustee may, at the Liquidating Trust's sole discretion, file a tax election to treat any such reserve as a Disputed Ownership Fund ("DOF") within the meaning of Treasury Regulations Section 1.468B-9(b)(1) for federal income tax purposes rather than to tax such reserve as a part of the Liquidating Trust. If such an election were made, the Liquidating Trust would comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal income tax return for the DOF and the payment of federal and/or state income tax due.

 9.9    No Revesting of Assets

 The Debtors' Assets shall not be vested in the Debtors on or following the Effective Date, but shall be vested in the Liquidating Trust and continue to be subject to the jurisdiction of the Bankruptcy Court following confirmation of the Plan until such property is distributed to holders of Allowed Claims in accordance with the provisions of the Plan, the Liquidating Trust Agreement, and the Confirmation Order.

 9.10    Preservation of Causes of Action; Settlement of Causes of Action

28

(a)     *Preservation of Causes of Action*

In accordance with section 1123(b)(3) of the Bankruptcy Code or any corresponding provision of similar federal or state laws, and except as otherwise provided in the Final DIP Order, the Plan or the Confirmation Order, on and after the Effective Date, (a) the Liquidating Trustee shall be deemed to be a representative of the Debtors as the party in interest in the Chapter 11 Cases and any adversary proceeding in the Chapter 11 Cases, under the Plan or in any judicial proceeding or appeal as to which any of the Debtors is a party and (b) the Liquidating Trustee shall retain all of the Causes of Action of the Debtors and their Estates, including, without limitation, fraudulent transfer or preferential transfer claims under Chapter 5 of the Bankruptcy Code, if any, and all other causes of action of a trustee and debtor in possession under the Bankruptcy Code. The Liquidating Trustee and/or the Liquidating Trust may, in accordance with the Liquidating Trust Agreement, enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Causes of Action.

The Debtors have not concluded their investigation into the Causes of Action. Accordingly, in considering the Plan, each party in interest should understand that any and all Causes of Action that may exist against such Person or entity may be pursued by the Liquidating Trust and/or the Liquidating Trustee.

(b)     *Settlement of Causes of Action*

Subject to the terms of the Liquidating Trust Agreement, at any time after the Confirmation Date but before the Effective Date, notwithstanding anything in this Plan to the contrary, the Debtors may settle some or all of the Causes of Action with the approval of the Court pursuant to Bankruptcy Rule 9019. After the Effective Date, the Liquidating Trustee, in accordance with the terms of this Plan and the Liquidating Trust Agreement, will determine whether to bring, settle, release, compromise, enforce or abandon such rights (or decline to do any of the foregoing).

9.11     Effectuating Documents; Further Transactions

Subject to the terms and conditions of the Plan, prior to the Effective Date, any appropriate officer of the applicable Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Subject to the terms and conditions of the Plan and the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trust shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## ARTICLE 10
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1     Contracts and Leases Not Specifically Assumed and Assigned are Rejected.

ACTIVE/71480038.6

All executory contracts and unexpired leases of the Debtors not expressly assumed, rejected or terminated herein, or by order of the Court entered prior to the Confirmation Date, or which are not subject of a pending application to assume or reject on the Confirmation Date, shall be deemed rejected as of the Confirmation Date.

10.2    Bar Date for Filing Claim For Rejection Damages.

If the rejection of an executory contract or unexpired lease by the Debtors pursuant to Section 10.1 hereof results in damages to the counterparty to such contract or lease, then a Claim for damages or any other amounts related in any way to such contract or lease shall be forever barred and shall not be enforceable against the Debtors, their successors and assigns or their property, unless a proof of claim is filed with the Court or Epiq and served on the Liquidating Trustee within thirty (30) days after the service of notice of the Effective Date, which notice shall prominently state that such executory contracts and unexpired leases have been rejected; *provided*, *however*, that the rejection claim bar date for unexpired leases and executory contracts rejected prior to the Confirmation Date shall be the date set forth in the applicable order rejecting such lease or contract.

10.3    Retiree Benefits.

The Debtors do not have any retiree benefit plans, funds or programs, as defined in section 1114 of the Bankruptcy Code.  Accordingly, no such payments will be, or are required to be, made pursuant to section 1129(a)(13) of the Bankruptcy Code.

## ARTICLE 11
## PROVISIONS REGARDING TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS

11.1    Objections to and Resolution of Disputed Claims.

After the Effective Date, the Liquidating Trustee shall have the right to make and file objections to Claims and to withdraw such objections.  Subject to the preceding sentence, all objections shall be litigated to Final Order; *provided*, *however*, that, with respect to Claims having a Face Amount less than $1,000,000, the Liquidating Trustee shall have the authority to compromise, settle or otherwise resolve any Claim without approval of the Court or notice to any party; *provided*, *however*, that the Liquidating Trustee reserves the right to seek relief before the Court with respect to any Disputed Claim.

The Liquidating Trustee shall file and serve all objections to Claims upon the holder of the Claim as to which the objection is made no later than one hundred and eighty (180) days after the later of the Effective Date or the date on which a proof of claim or request for payment is filed with the Court (the "***Objection Deadline***").  The Objection Deadline may be extended for one ninety (90) day period by the Liquidating Trustee by filing a notice of the extended Objection Deadline with the Court.  Thereafter, the Objection Deadline may be further extended only by an order of the Court.

ACTIVE/71480038.6

11.2    No Distributions Pending Allowance.

Notwithstanding any other provision hereof, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes Allowed.

11.3    Estimation of Claims.

The Debtors and, after the Effective Date, the Liquidating Trustee on behalf of the Liquidating Trust, may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether any of the Debtors or any other person previously objected to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time.  In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Liquidating Trust, as the case may be, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

11.4    No Post-Effective Date Interest.

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest thereon.

**ARTICLE 12**
**EFFECTS OF CONFIRMATION OF THIS PLAN**

12.1    Discharge of the Debtors

Pursuant to Bankruptcy Code section 1141(d)(3), Confirmation will not discharge Claims against the Debtors; *provided*, *however*, that no Claimholder or Interest holder may, on account of such Claim or Interest, seek or receive any payment or other distribution from, or seek recourse against, any Debtor, the Liquidating Trust, the Liquidating Trustee, and/or their respective successors, assigns and/or property, except as expressly provided in the Plan.

12.2    Exculpation and Release of Debtors, Committee and Professionals.

**Except to the extent arising from willful misconduct or gross negligence, any and all Claims, liabilities, causes of action, rights, damages, costs and obligations held by any party against the Debtors, the Committee and their respective attorneys, accountants, financial advisors, agents and other professionals, and their officers, directors and employees, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising or accruing, whether or not yet due in any manner arising between the Petition Date and the Effective Date and related to the administration of the Chapter 11 Cases or**

31

the formulation, negotiation, prosecution or implementation of this Plan, shall be deemed fully waived, barred, released and discharged in all respects, except as to rights, obligations, duties, claims and responsibilities preserved, created or established by terms of this Plan.

12.3    Injunction Enjoining Holders of Claims Against the Debtors.

This Plan is the sole means for resolving, paying or otherwise dealing with Claims and Interests.  To that end, except as expressly provided herein, at all times on and after the Effective Date, through and including the date of entry of a Final Decree closing the Chapter 11 Cases, all Persons who have been, are, or may be holders of Claims against or Interests in the Debtors arising prior to the Effective Date, shall be enjoined from taking any of the following actions against or affecting the Liquidating Trustee, the Debtors, the Committee (but not the Committee's members), the Liquidating Trust, their estates, or their property, including the Assets, with respect to such Claims or Interests (other than actions brought to enforce any rights or obligations under this Plan):

(a)    commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtors, their Estates, the Liquidating Trust or their property (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date);

(b)    enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or order against the Debtors, their Estates, the Liquidating Trust or their Assets;

(c)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien against the Debtors, their Estates, the Liquidating Trust or their Assets;

(d)    asserting any right of subrogation, or recoupment of any kind, directly or indirectly against any obligation due the Debtors, their Estates, the Liquidating Trust or their Assets; and

(e)    proceeding in any manner in any place whatsoever against the Debtors, their Estates, or their Assets that does not conform to or comply with the provisions of this Plan.

**ARTICLE 13**
**RETENTION OF JURISDICTION**

13.1    Claims and Actions.

The Court shall retain jurisdiction over the Chapter 11 Cases, including, without limitation, such jurisdiction as is necessary to ensure that the purposes and intent of this Plan are implemented.  The Court shall also expressly retain jurisdiction to hear and determine all Causes of Action on behalf of the Estates and Claims against the Debtors or the Liquidating Trust;

32

*provided*, notwithstanding the foregoing or any other provision of the Plan or Disclosure Statement, nothing in the Plan or Disclosure Statement shall modify or affect in any way (a) whether the Bankruptcy Court has jurisdiction to hear and/or determine any Cause of Action in the adversary proceeding against the Second Lien Lenders, captioned *Official Committee of Unsecured Creditors v. PineBridge Vantage Capital, L.P., et al. (In re Personal Communications Devices, LLC)*, Adv. Pro. No. 13-8174 (AST) or (b) any motion to withdraw the reference with respect to any Cause of Action in the adversary proceeding against the Second Lien Lenders, captioned *Official Committee of Unsecured Creditors v. PineBridge Vantage Capital, L.P., et al. (In re Personal Communications Devices, LLC)*, Adv. Pro. No. 13-8174 (AST).

13.2    Retention of Additional Jurisdiction.

The Court shall also retain jurisdiction for the purpose of classification of the Claims of any Creditor or Interests of any Interestholder and the determination of such objections as may be filed with respect to the Claims and Interests, including proceedings for estimation of Claims or Interests pursuant to section 502(c) of the Bankruptcy Code. The Court shall further retain jurisdiction as set forth in this Plan and for the following additional purposes:

(a)    To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

(b)    To determine any and all adversary proceedings, applications and contested matters, whether filed or commenced before or after the Effective Date;

(c)    To hear and determine any objection to, or request for estimation of, any Administrative Claim or Claim;

(d)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(e)    To issue orders in aid of execution and consummation of this Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(f)    To consider any amendments to or modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

(g)    To hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code and this Plan;

(h)    To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Sale Order, this Plan, the Confirmation Order, any transactions or payments contemplated by the Asset Purchase Agreement, this Plan, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

ACTIVE/71480038.6

(i)      To issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any person or entity with the consummation, implementation or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(j)      To recover all Assets of the Debtors, wherever located;

(k)      To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors or the Liquidating Trust for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

(l)      To hear and determine any applications for the assumption and assignment or rejection of executory contracts and leases that may be designated by the Debtors prior to the Confirmation Hearing, and assumed and assigned or rejected thereafter, and the allowance of Claims resulting therefrom;

(m)      To hear and determine all disputes involving the existence, scope and nature of the discharges granted under this Plan, the Confirmation Order or the Bankruptcy Code;

(n)      To resolve any disputes among the Plan Proponents regarding the Plan;

(o)      To enter a final decree closing the Chapter 11 Cases; and

(p)      To hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE 14
## NOTICE PROVISIONS

14.1    <u>Notices</u>.

Except as otherwise set forth in this Plan, all notices or requests in connection with this Plan shall be in writing and will be deemed to have been given when received by personal delivery, facsimile, overnight courier, or first class mail and addressed to:

**If to the Debtors:**

Raymond F. Kunzmann
Personal Communications Devices, LLC
80 Arkay Drive, Suite 210
Hauppauge, New York 11788
Raymond.Kunzmann@pcdphones.com

with a copy to:

Emanuel C. Grillo, Esq.
GOODWIN PROCTER LLP
The New York Times Building
620 8th Avenue
New York, New York 10018
Facsimile:  (212) 355-3333
egrillo@goodwinprocter.com

**If to the Committee:**

PERKINS COIE LLP
30 Rockefeller Plaza
22nd Floor
New York, New York 10112
Tel:  (212) 262-6900
Fax:  (212) 977-1636
Attn:   Schuyler Carroll (scarroll@perkinscoie.com)
            Tina N. Moss (tmoss@perkinscoie.com)
            Gary F. Eisenberg  (geisenberg@perkinscoie.com)

**If to the Liquidating Trustee:**

[_____]

14.2    <u>Limitation on Notice</u>.

The Debtors shall give the following notice with regard to the following matters, which notice shall be deemed to be good and sufficient notice of such matters with no requirement for any additional or further notice.

14.2.1  <u>Notice of Entry of Confirmation Order and Effective Date</u>.  Notice of the entry of the Confirmation Order and the Effective Date shall be sufficient if mailed to all known holders of Claims and Interests (which have not become Disallowed as of the date of mailing). Such notice shall be mailed within five (5) Business Days after the Effective Date.

14.2.2  <u>Post-Confirmation Date Service</u>.  From and after the date the Confirmation Order becomes a Final Order, notices of appearances and demands for service of process filed with the Court prior to such date shall no longer be effective.  After the Effective Date, no further notices (other than notice of entry of the Confirmation Order and the Effective Date) shall be required to be sent to any entities or Persons, except to the Liquidating Trustee, the Office of the U.S. Trustee and any Creditor who files a renewed request for service of pleadings and whose Claim has not been fully satisfied.

14.2.3  <u>General Notice To Creditors</u>.  All notices and requests to Creditors of any Class shall be sent to them at the addresses set forth on the proofs of claim or, if no proof of claim was filed, to their last known address as reflected in the records of the Debtors.  Any

ACTIVE/71480038.6

Creditor may designate in writing any other address for purposes of this Article, which designation shall be effective upon receipt by the Debtors.

## ARTICLE 15
## MISCELLANEOUS PROVISIONS

15.1    Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code section 1146(a), any transfers from any of the Debtors to the Liquidating Trust or to any other Person pursuant to the Plan in the United States shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

15.2    Setoffs/Counterclaims.

Except as otherwise provided in this Plan, the Debtors may, but shall not be required to, set off or counterclaim against any Claim and the payments or other Distributions to be made pursuant to this Plan in respect of the Claim, claims of any nature whatsoever the Estates may have against the holder of the Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any claim that the Estates may have against the holder; *provided*, *however*, that the Debtors will not seek to set off or counterclaim for any obligation that is not yet due.  Setoffs or counterclaims arising from events after the Petition Date shall reduce the payouts under any Allowed Claim dollar for dollar.  Setoffs or counterclaims arising from pre-petition events shall only reduce the amount of the Allowed Claim and therefore, shall only reduce the payout amount proportionally with the reduction in the Allowed Claim.  If any counterclaim or setoff asserted by the Debtors exceeds the amount of any Claim, the holder of such Claim shall not be entitled to any Distribution under this Plan, and the Debtors will reserve the right to recover any such excess counterclaim or setoff from the holder of the applicable Claim.

15.3    Plan Supplement.

The Plan Supplement and the documents contained therein shall be filed with the Bankruptcy Court no later than five (5) Business Days before the deadline for voting to accept or reject this Plan, provided that the documents included therein may thereafter be amended and supplemented prior to execution, so long as no such amendment or supplement materially affects the rights of holders of Claims.  The Plan Supplement and the documents contained therein are incorporated into and made a part of this Plan as if set forth in full herein.  The Plan Supplement shall name the Liquidating Trustee and members of the Liquidating Trust Oversight Committee initially selected by the Committee.

ACTIVE/71480038.6

15.4    Amendment or Modification of this Plan.

Alterations, amendments or modifications of this Plan may be proposed in writing by the Plan Proponents at any time prior to the Confirmation, provided that this Plan, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with section 1125 of the Bankruptcy Code.  The Plan Proponents also reserve the right to make such modifications at or prior to any hearings on Confirmation as are necessary to permit this Plan to be confirmed under section 1129 of the Bankruptcy Code.

A holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims and Equity Interests.

15.5    Revocation and Withdrawal of this Plan.

The Plan Proponents reserve the right to revoke or withdraw this Plan at any time before entry of a Confirmation Order.  If the Plan Proponents revoke or withdraw this Plan prior to the Confirmation Date, if the Confirmation does not occur, or the Effective Date does not occur within 120 days after the Confirmation Date, then this Plan shall be deemed to be null and void. In such event, nothing contained herein or in any Disclosure Statement relating to this Plan shall be deemed to constitute an admission of validity, waiver or release of any Claims by or against the Debtors or any Person or to prejudice in any manner the rights of the Debtors or any Person in any proceeding involving the Debtors.

15.6    Severability.

In the event that the Court determines, prior to the Confirmation Date, that any provision in this Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Interests as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

15.7    Binding Effect.

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Effective Date, the provisions of this Plan shall bind all present and former holders of Claims and Interests in the Debtors and their respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under this Plan and whether or not such holder has accepted this Plan.

ACTIVE/71480038.6

15.8    No Liability for Solicitation.

Pursuant to section 1125 of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable on account of such solicitation, for violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan.

15.9    Injunctions or Stays.

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Final Distribution Date.

15.10    Business Days.

If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

15.11    Governing Law.

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an Exhibit to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflicts of law of such jurisdiction.

15.12    Withholding and Reporting Requirements.

In connection with the consummation of this Plan, the Debtors, the Liquidating Trust and the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution.  Any party issuing any instrument or making any Distribution under this Plan has the right, but not the obligation, to not make a Distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

15.13    Headings.

Headings are used in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

ACTIVE/71480038.6

15.14 <u>Exhibits</u>.

All Exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

15.15 <u>Filing of Additional Documents</u>.

On or before Substantial Consummation, the Debtors shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

15.16 <u>Enforcement of Confirmation Order</u>.

Any party in interest shall have standing to seek any such order from the Court as shall be necessary to implement this Plan and enforce the terms and provisions of the Confirmation Order.

ACTIVE/71480038.6

Dated: February 11, 2014
        Hauppauge, New York

Respectfully Submitted,

PERSONAL COMMUNICATIONS DEVICES, LLC and
PERSONAL COMMUNICATIONS DEVICES
HOLDINGS, LLC

*/s/ Raymond F. Kunzmann*
By:  Raymond F. Kunzmann
Title:  Chief Financial Officer

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE DEBTORS

*/s/ Schuyler M. Carroll, Esq.*
By:  Schuyler M. Carroll, Esq.
Title:  Partner, Perkins Coie LLP, Counsel to the
Committee

ACTIVE/71480038.6