UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| PERSONAL COMMUNICATIONS | ) | Case No.  13-74303 (AST) |
| DEVICES, LLC, *et al.*,[1] | ) | 13-74304 (AST) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### DECISION AND ORDER GRANTING IN PART AND PERMISSIVELY ABSTAINING IN PART FROM QUALITY ONE WIRELESS' MOTION TO ENFORCE SALE ORDER, AND GRANTING IN PART GOLDIE GROUP MOTION FOR RELIEF FROM THE AUTOMATIC STAY

***Summary of dispute and ruling***

Pending before the Court are the following motions: (i) the *Amended Fourth Omnibus Objection of the Liquidating Trustee to Modify or Disallow Certain Claims* (the "Claim Objection") [dkt item 659]; (ii) the *Motion of Quality One Wireless to Enforce Sale Order* (the "Enforcement Motion") [dkt item 702]; (iii) the *Motion of The Goldie Group, LLC, pursuant to 28 U.S.C. § 1334(c)(1) and Bankruptcy Rules 5011 and 9014, for Permissive Abstention from Quality One Wireless' Motion To Enforce Sale Order* (the "Abstention Motion") [dkt item 756]; and (iv) the *Motion of The Goldie Group, LLC pursuant to § 362(d)(1) of the Bankruptcy Code and Bankruptcy Rule 4001(a) for Relief from the Automatic Stay* (the "Stay Relief Motion" and collectively, the "Motions") [dkt item 757].  The Court will address all of the Motions in one Order because they involve the same parties and overlapping issues of fact and law.

By way of brief background, one of the above captioned debtors, Personal Communications Devices, LLC ("PCD"), sold a variety of assets during the bankruptcy case to

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are:  Personal Communications Devices, LLC, a Delaware limited liability company (4171) and Personal Communications Devices Holdings, LLC, a Delaware limited liability company (4096).

Quality One Wireless ("Quality One") pursuant to an Order of this Court; prior to PCD filing bankruptcy, it had sued the Goldie Group, LLC ("Goldie") in Massachusetts state court creating a breach of contract dispute; Quality One, as the purchaser of PCD's rights against Goldie, has been seeking to recover from Goldie the debt allegedly owed to PCD; Goldie does not assert that it lacked notice of the sale process; various claims and cross claims have now wound their way through lawsuits in Massachusetts state and federal district court before finding their way here.

For the reasons set forth below, the Court will grant the portion of the Enforcement Motion that asks this Court to delineate the scope and effect of its own Order approving the sale of PCD's assets to Quality One but, will permissively abstain from deciding the balance of the Enforcement Motion. The Court will also lift the automatic stay to the extent necessary in order for the parties to resolve the balance of their disputes currently pending before the Massachusetts state court where they elected to first raise the issues now presented here.

### Jurisdiction

This Court has jurisdiction to decide the Motions pursuant to 28 U.S.C. §§ 157(b) and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011. The following constitutes the Court's findings of fact and conclusions of law to the extent Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") so requires. FED. R. BANKR. P. 7052.

### Background and Procedural History

### 1. *Debtors' bankruptcy filing and related history*

PCD was a company that purchased and sold cell phones and other wireless devices, acting as an intermediary between manufacturers and carriers, and provided related services.

Personal Communications Devices Holdings, LLC ("Holdings") was the parent company of PCD.

Goldie is a Massachusetts liability company that is in the business of selling cellular phones, including obsolete model phones; it purchases large amounts of used and obsolete model cell phones, repairs and refurbishes the phones, and then sells them to other resellers through its various distribution channels.

Quality One is a Nevada limited liability company that has a principal place of business in Orlando, Florida.

On or about February 20, 2013, PCD commenced an action against Goldie in the Middlesex Superior Court of Massachusetts (the "State Court Action") by filing a complaint in which it alleged that Goldie owed it in excess of $2,100,000 under purchase and sales contracts for certain cellular phones sold by PCD to Goldie in 2012.  On or about March 14, 2013, Goldie filed an answer to PCD's complaint and asserted various affirmative defenses and counterclaims, including, breach of contract, breach of the covenant of good faith and fair dealing, violation of Massachusetts state law for engaging in unfair and deceptive practices, and an injunction prohibiting PCD from selling its assets.  PCD answered the counterclaims on or about April 5, 2013.  The parties then proceeded with discovery until August 19, 2013 (the "Petition Date"), when PCD and Holdings (collectively, "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, commencing case nos. 13-74303 and 13-74304; these cases were administratively consolidated.

On the Petition Date, Debtors filed a series of first day motions, including a motion seeking approval of a Debtor-in-possession financing facility, as well as a motion to sell substantially all of their assets to Quality One under § 363(b) and (f), along with a motion to

establish bid procedures for the proposed sale.  That same day, Debtors and Quality One executed an Asset Purchase Agreement (as amended the "APA") pursuant to which Quality One agreed to purchase substantially all of Debtors' assets, and assume certain defined liabilities.[2]

On September 16, 2013, this Court entered an Order approving bid procedures.  [dkt item 116]

On October 17, 2013, the Court entered an Order (the "Sale Order") approving Debtors' sale of substantially all of their assets to Quality One for approximately $135,000,000, free and clear of all liens, claims, and encumbrances.  [dkt item 207]

Both the Bid Procedures Order and the Sale Order were entered on notice to Goldie.

On October 30, 2013, the Court entered an Order, as amended, establishing a deadline of January 6, 2014, for the filing of non-governmental proofs of claim.  [dkt item 229]

On December 31, 2013, Goldie filed a secured claim against PCD in the amount of $3,100,577.21 on account of the counterclaims it filed in the State Court Action (the "Goldie Claim")[3].  The Goldie Claim asserts secured status based on a right of setoff and recoupment against PCD.

On April 29, 2014, the Court confirmed the Debtors' *First Amended Plan of Liquidation* (the "Plan").  [dkt item 421]  On May 20, 2014, the effective date of the Plan, all causes of action held by the Debtors vested in the Devices Liquidation Trust (the "Trust").

### 2.  *Post-petition activity in Massachusetts state and federal court*

Following this Court's approval of the sale of PCD's assets to Quality One, on December 6, 2013, PCD filed a motion in the State Court Action seeking to substitute Quality One as the

---

[2] On August 26, 2013, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors of Debtors' estates. On September 13, 2013, the Court entered its final DIP Order. [dkt item 114]

[3] The claim is designated on the claims' register as claim no. 94.

party plaintiff and to dismiss PCD from the action.  Goldie opposed this request.  By order dated December 12, 2013, the state court denied the substitution request without discussion, but allowed Quality One to be added as a party plaintiff.

On December 23, 2013, Quality One sued Goldie in the Federal District Court of Massachusetts seeking relief similar to the relief sought by PCD in the State Court Action (the "District Court Action").  Goldie moved to dismiss the District Court Action.

On December 24, 2013, PCD filed a suggestion of bankruptcy in the State Court Action; that same day the State Court stayed the State Court Action.

On July 11, 2014, U.S.D.J. Saylor concluded that under the prior-pending-action doctrine, the District Court Action should be stayed, and directed the parties to resolve their dispute in the State Court Action.  *Quality One Wireless, LLC v. Goldie Group, LLC*, 37 F. Supp. 3d 536, 540-44 (D. Mass. 2014).  In reaching his conclusion, Judge Saylor noted that the parties in the lawsuits were nearly identical, the "state and federal complaints allege the same causes of action, arise out of the same transactions, [] seek the same relief[,] [a]nd resolution of the two cases will involve the same evidence"; he further highlighted that PCD had chosen the state court as the appropriate forum, which had concurrent jurisdiction over the dispute, and that considerations of judicial economy and comity favored the state court's adjudication of the matter.  *Id.* at 541, 543.

Following the District Court's decision, Goldie then moved in the State Court for leave to assert against Quality One the affirmative defenses and counterclaims it had asserted against PCD, even though Quality One had not yet asserted any claims against Goldie.  PCD filed limited opposition to this request and PCD and Quality One jointly cross-moved to lift the State Court's stay, vacate the order denying the substitution of Quality One, and substitute Quality

One for PCD.  On October 30, 2014, the State Court granted Goldie's motion to assert the defenses and counterclaims against Quality One and denied the cross-motion without discussion.

On November 10, 2014, Goldie filed a pleading asserting various affirmative defenses and counterclaims against Quality One.  Although the parties have suggested that these defenses and counterclaims are similar to those asserted by Goldie against PCD, the parties did not provide the Court with a copy of this pleading.

Shortly thereafter, on or about November 17, 2014, Quality One and PCD jointly moved, among other things, to dismiss Goldie's counterclaims that were asserted against Quality One on the grounds that the Sale Order precluded their assertion.

On June 22, 2015, the State Court entered an order denying Quality One's and PCD's motion to dismiss.  The State Court noted that with respect to its prior determination denying PCD's motion to substitute Quality One, "[w]hile I did not allow the Wholesale substitution of Q1W for PCD, [my] intent was that Q1W would substitute for PCD but that Pcd would remain as a plaintiff to be sure that a complete resolution could be obtained of all the issues among the parties."  The State Court elaborated that "[Goldie's] defenses and counterclaims may ultimately not prevail; however, I have permitted them to be asserted" and authorized Quality One to assert any claims it may have against Goldie in addition to those already asserted by PCD.

On July 23, 2015, Quality One filed an answer to Goldie Group's counterclaims in the State Court Action.  The State Court Action remains pending, but apparently continues to be stayed by the State Court's December 2013 order.

### 3. *The Trust, acting on behalf of PCD, pursuant to the Plan, and Quality One then seek relief from this Court*

On August 10, 2015, the Trust filed its Claim Objection, which includes an objection to the Goldie Claim.  As a basis for disallowing all of the claims listed in the Claim Objection,

including that of Goldie, the Trust argued that after reviewing Debtors' books and records, the claims "represent unliquidated claims for which the claimants have not filed amended claims to assert the dollar amount owed in connection with their claims", or are claims for which the Trust "believes the Debtors' estates have no liability".  Claim Objection, at p. 5, ¶ 15.

On September 24, 2015, Goldie filed a response in opposition to the Claim Objection. [dkt item 673]  After detailing the lengthy history of the dispute between Goldie and PCD, Goldie argued that the Trust's Claim Objection fails to rebut the *prima facie* validity of the Goldie Claim and that any determination on its merits should be left to the State Court.

On November 11, 2015, more than two years after this Court had entered the Sale Order, and nearly two years after intervening in the State Court Action and commencing the District Court Action, Quality One filed its Enforcement Motion.  Quality One argued that the Sale Order vested Quality One with title to all of PCD's assets free and clear of all liens, claims, and encumbrances, including the affirmative defenses and counterclaims asserted by Goldie against it in the State Court Action.  Quality One further contended that this Court should direct Goldie to withdraw those affirmative defenses and counterclaims because Goldie's assertion of them violate the Sale Order, determine that Goldie may only assert claims against the sale proceeds, and award Quality One its attorneys' fees that were incurred in filing the Enforcement Motion.

On January 13, 2016, Goldie filed opposition to the Enforcement Motion.  [dkt item 734] Goldie contended that PCD's obligations that relate to the State Court Action survived the Sale Order and have in fact been assumed by Quality One.  Goldie argued that it is not therefore prohibited from asserting its defenses and counterclaims against Quality One.  Goldie also requested that this Court abstain from deciding the Enforcement Motion in favor of the State Court.

On January 13, 2016, the Trust filed a statement alleging that it will not be taking a position on the Enforcement Motion.  [dkt item 736]

On January 20, 2016, the Court conducted hearings in connection with the Claim Objection and the Enforcement Motion.  At the conclusion of the hearings, the Court directed that Goldie bring its request for abstention by separate motion because Bankruptcy Rule 5011 so mandates, and that stay relief may be necessary for Goldie to proceed with the State Court Action as against PCD.  The Court further set a briefing schedule for the filing of any abstention or stay relief motions, directed that any timely filed motion would be on submission with the Court upon the expiration of the briefing deadlines, and adjourned the Enforcement Motion and Claim Objection *sine die*.

On February 19, 2016, Goldie filed the (i) Abstention Motion requesting that the Court permissively abstain in favor of the State Court from determining the merits of Quality One's Enforcement Motion; and (ii) the Lift Stay Motion seeking relief from the automatic stay to allow the Goldie Claim to be liquidated in the State Court Action.

On March 11, 2016, Quality One and the Trust filed their respective pleadings in opposition to the Abstention and Lift Stay Motions, which included the declarations of Raymond Kunzmann, Debtors' former Chief Financial Officer, and John J. Dussi of the Law Firm of Cohn & Dussi, LLC, who served as PCD's and Quality One's counsel in the State Court Action and as Quality One's counsel in the District Court Action.  [dkt items 773 – 778]

On March 21, 2016, Goldie filed replies thereto and the declarations of Bruce Goldie, the Chief Executive Officer of Goldie, and Thomas J. Scannell. Esq., counsel for Goldie in both the State Court and District Court Actions.  [dkt items 786 – 789]

This Court has thoroughly reviewed all of the parties' submissions.  As is detailed below, while this Court is in the best position to interpret its Sale Order and will do so to the extent necessary to avoid the unnecessary waste of the resources of the State Court, the forum shopping by Quality One cannot be rewarded, and this Court is confident that its sister state court can decide the merits of the PCD – Goldie – Quality One dispute consistent with this Order.

### Legal Analysis

***1.  Quality One only purchased PCD's right, title, or interest in the assets that PCD owned at the time of the closing of the sale and only assumed the liabilities related to those sold assets***

Quality One and Goldie present competing interpretations of the terms of the Sale Order and the APA.  Accordingly, the Court must delve into the specific language used in those documents.

The Sale Order refers to various terms that are defined in the APA, including what assets PCD sold to Quality One and what PCD liabilities Quality One agreed to assume.  Under the APA, Quality One purchased, among other things, all of PCD's "right, title and interest to …Accounts Receivable…Products", and all "rights, claims or causes of action against third parties" related to all of the purchased assets.  APA, § 2.1(c), (f), and (p).  "Accounts Receivable" is defined under the APA to include the "right to payment of monetary obligations" for property sold or services rendered by PCD.  *Id*., § 1.1.  There is no serious dispute that PCD sold to Quality One their rights to collect any receivables owed by Goldie to PCD, which claims formed the basis for PCD's complaint in the State Court Action.  Further, the APA defines "Products" as "any and all mobile cellular handset systems and other wireless communications devices and accessory products developed, manufactured, owned, purchased, sold or licensed by

the Debtor, including, but not limited to[4], the Products specified on Schedule 2.1(f)." *Id*. The parties did not provide the Court with a copy of Schedule 2.1(f), nor is it attached to the form of the APA which is attached to the Sale Order; however, it is undisputed that the Schedule does not list the items PCD sold to Goldie, and it appears to be undisputed that the only items in dispute in the State Court Action were sold to Goldie prior to PCD filing bankruptcy.

Goldie incorrectly contends that the phones it purchased from PCD pre-petition fall within the APA's definition of "Products" because that definition encompasses all of the cell phones PCD ever "sold", including those phones not expressly listed on schedule 2.1(f); this construction is incorrect because Quality One only purchased the "Products" to which PCD retained a "right, title, and interest" as of the date of the closing; in addition, Goldie's construction of the APA is illogical; said more plainly, PCD could not sell to Quality One what PCD no longer owned.

Goldie further incorrectly argues that the affirmative defenses and counterclaims asserted against PCD in the State Court Action are based upon "contractual obligations relating to the Products" and are therefore liabilities assumed by Quality One. While Quality One did assume certain of Debtors' liabilities as provided for in the APA, the only relevant liabilities Goldie points to here are "(c) The warranties and guarantees which are contractual obligations relating to the Products included in the Purchased Assets", *id.* at § 2.3(c), which only relate to the Products PCD owned on the closing date.

Further, the Sale Order states that the sale of PCD's assets shall vest Quality One:

> with all right, title, and interest of the Debtors to the Assets free and clear of all Liens, Claims, encumbrances, obligations, liabilities, contractual commitments or

---

[4] The Court notes that the § 1.2(a) of APA states that "the word 'including' or any variation thereof means 'including, without limitation' and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it."

interests of any kind or nature whatsoever (collectively, the "Interests"), including, but not limited to, (i) those that purport to give to any party a right or option to effect any forfeiture, modification or termination of the Debtors' interests in the Assets, or any similar rights ... For avoidance of doubt, all Interests other than the Assumed Liabilities shall attach to the cash proceeds received by the Debtors ultimately attributable to the property against or in which such Interests are asserted….

Sale Order, at p. 6, ¶ N[5]. Thus, "Assumed Liabilities", which refer to those liabilities assumed under the APA, for these purposes only attach to Products sold under the APA; if, as Quality One asserts, the items sold to Goldie were all sold pre-petition, they are not Products sold under the Sale Order or the APA because, at the sale date, PCD held no right, title or interest in items it sold pre-petition.

### 2. The scope and effect of the "free and clear" provisions of the Sale Order - Goldie's affirmative defenses and counterclaims to its payment obligations

Goldie further argues that the free and clear provisions of the Sale Order, nevertheless, do not bar Goldie's assertion of affirmative defenses and counterclaims against Quality One seeking to collect on PCD's account receivable.

The Sale Order provides that:

Except as expressly permitted or otherwise specifically provided for in the [APA], … upon Closing, good and marketable title in and to the Assets shall be transferred to the Buyer free and clear of all Interests of any kind or nature whatsoever, including, but not limited to, … (b) all debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or any of the Debtors' predecessors or affiliates, and (c) Claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests, and matters of any kind an nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the Petition Date, including, without limitation, any product liability, guarantee, assurance, or warranty (whether expressed or implied) or that arise out by operation of law, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, all claims arising under doctrines of successor liability, with all such Interests

---

[5] Neither the term "Claim" nor "Assumed Liabilities" are defined in the Sale Order, but are defined in the APA. *See* Sale Order, at p. 1, n. 2. The term "Claim" bears the same definition of a claim under § 101(5) of the Bankruptcy Code and the term "Assumed Liabilities" is excerpted above. APA, §§ 1.1, 2.3.

of any kind or nature whatsoever to attach to the net proceeds of the Sale of the Assets with the same order, priority, validity, force and effect, which they now have against the Assets subject to any claims and defenses the Debtors or their estates may possess with respect thereto.

Sale Order, at p. 18, ¶ 5.  The Sale Order also states that any third party who holds any interest in the assets being transferred on the closing date who has not objected to the sale has been deemed to consent to the sale.  *Id.*, at pp. 6-7, ¶ N.  Moreover, the Sale Order contains an injunction which states:

> Except as expressly permitted by the Agreement … or by this Order, all persons and entities, including, but not limited to, … contract parties, lessors, trade creditors and all other creditors, holding Interests of any kind or nature whatsoever against or in the Debtors or in the Debtors' interests in the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, such Assets or with respect to any Interests arising out of or related to the Assets, shall be and hereby are forever barred, estopped and permanently enjoined from commencing, prosecuting or continuing in any manner any action or other proceeding of any kind against Buyer, its property its successors and assigns, alleged or otherwise, its affiliates or such Assets

*Id.*, at pp. 20-21, ¶ 8.

This Court concludes that this plain language of the Sale Order prohibits Goldie from asserting against Quality One any and all legal and equitable claims and rights that could have been asserted against PCD that are related to the account receivables that were sold under the APA, to the extent such claims and rights arose prior to the closing of the sale to Quality One. Although the Sale Order provides that any claims, liens, interests, etc. will attach to the sale proceeds in their order of priority and subject to any of PCD's defenses that existed prior to the sale, there is no express language in the Sale Order concerning the survival of affirmative defenses against Quality One.

Goldie nevertheless argues that as a matter of law a "free and clear" sale under § 363(f) may not strip a party of its right to assert contractual affirmative defenses that are based on a debtor's performance under a contract.  Goldie further argues that the Debtors' failure to provide it notice that its contractual defenses would be waived if it failed to object to the sale renders any language in the Sale Order that purports to effectuate that waiver unenforceable.  Goldie relies on the decisions of *Folger Adam Security, Inc. v. DeMatteis/Macgregor,* 209 F.3d 252, 261 (3rd Cir. 2000) and *Hispanic Indep. TV Sales, LLC v. Kaza Azteca Am. Inc.*, 2012 U.S. Dist. LEXIS 46239 at *13-15 (S.D.N.Y. Mar. 30, 2012).

In *Folger Adam Security, Inc.,* the Third Circuit Court of Appeals considered whether a debtor's free and clear sale of assets under § 363(f) extinguishes a third party's right to assert against the purchaser of those assets the affirmative defenses of setoff, recoupment and other unspecified contractual defenses which arose due to alleged defaults by the debtor in its contracts with the third party.  209 F.3d at 253-54.  The court distinguished the right of recoupment, a defense which seeks to diminish or extinguish a plaintiff's claim based upon a series of transactions related to that claim, and setoff, a right that arises out of a transaction unrelated to a plaintiff's claim.  *Id.* at 260-61.  The Third Circuit then held that the defense of recoupment and the other unspecified contractual defenses are not themselves claims (a right to payment or equitable remedy) or interests (a property right under applicable state law) that can be extinguished through a § 363(f) sale, but that a § 363(f) sale precludes the assertion of setoff rights against the asset purchaser unless the setoff rights are exercised against the debtor prior to the bankruptcy filing.  *Id.* at 261-264[6].  Because none of the documents associated with the sale provided notice that the proposed sale would be free and clear of contract defenses, and that by

---

[6] With respect to its holding on the recoupment defense, the Third Circuit largely adopted the bankruptcy court's analysis in *In re Lawrence United Corp.*, 221 B.R. 661 (Bankr. N.D.N.Y. 1998).

failing to object, such defenses would be waived, the court therefore held, on an alternative basis, that all of the affirmative contract defenses should remain and the setoff defense should only remain to the extent it could be shown that setoff was exercised before the bankruptcy filing.  *Id.* at 266-67.

The Southern District of New York in *Hispanic Indep. TV Sales* followed *Folger Adams* in deciding that a third party's counterclaim that sounded in recoupment, which was in reality an affirmative defense, that was asserted against the purchaser of a debtor's assets was not extinguished by the free and clear language of the bankruptcy court's sale order.  2012 U.S. Dist. LEXIS 46239, at *2, 13-14.

This Court concludes under these circumstances that the Sale Order did not extinguish Goldie's affirmative defenses that relate to Goldie's pre-petition relationship with PCD, based in part on the proper reach of Section 363(f) and in part on the absence of any express language in the notice of a proposed sale that would have alerted Goldie that the sale would be free and clear of affirmative defenses and that the failure to object would result in the waiver of such defenses. The Sale Order did, however, extinguish Goldie's counterclaims against Quality One.

Based on the foregoing, the Court concludes that the Sale Order does not preclude Goldie from asserting any affirmative defenses against Quality One, but does preclude Goldie's assertion of counterclaims against Quality One, with the exception of any counterclaim that sounds in recoupment, which is in effect an affirmative defense; further, the Sale Order precludes Goldie from asserting against Quality One any defense or claim of setoff, unless such defense is based upon a right of setoff that was exercised before the Petition Date.

Notwithstanding this analysis, Goldie may still assert against PCD's estate (now the Trust) any counterclaims it has against PCD which, if allowed in an amount in excess of any

14

contractual liability to PCD which was sold to Quality One, would constitute an allowable claim against this bankruptcy estate, the nature of which as secured or unsecured would be determined after such claim is liquidated in the State Court Action.

3. ***Quality One's request for attorneys' fees incurred as a result of filing the Enforcement Motion are denied.***

In the Enforcement Motion, Quality One requests that the Court direct Debtors to pay Quality One its attorneys' fees that were incurred in connection with the Enforcement Motion. This request is denied because Quality One has not articulated a factual or legal basis for this request[7], nor has the Court's own review of the circumstances indicated that this relief is warranted.

4. ***This Court will permissively abstain from deciding the balance of the Enforcement Motion***

This Court has previously discussed the legal standard for abstention in several reported decisions. *See In re Exeter Holdings, Ltd.*, Case No. 11-77954 (AST), 2013 Bankr. LEXIS 1008, at *7-8, (Bankr. E.D.N.Y. Mar. 14, 2013); *Guretzky v. Wallace*, Case No. 08-75231 (AST), Adv. Pro. No. 08-8048-ast; dkt item 13-1 (Oct. 27, 2008), *aff'd, Wallace v. Guretzky,* 2009 U.S. Dist. LEXIS 91284, 2009 WL 3171767 (E.D.N.Y. Sept. 29, 2009); *see also Int'l Tobacco Partners, Ltd.*, 462 B.R. 378 (Bankr. E.D.N.Y. 2011); *In re Horowitz,* 2010 Bankr. LEXIS 701, 2010 WL 814103 (Bankr. E.D.N.Y. Mar. 1, 2010); *In re Wider,* 2009 Bankr. LEXIS 3981, 2009 WL 4345411 (Bankr. E.D.N.Y. Nov. 30, 2009). In each of those cases, this Court permissively

---

[7] Local Bankruptcy Rule 9013-1(a) states:

(a) *Rule or Statutory Basis.*
A motion shall be in writing, unless made during a hearing, and shall specify the rules and statutory provisions upon which it is based and the legal authorities that support the requested relief, either in the motion or in a separate memorandum of law, and the factual grounds for relief. Failure to provide this information may be grounds to strike the motion from the calendar or deny the motion.

abstained from hearing a dispute because there was a pre-bankruptcy action between the parties pending in state court that could more efficiently and expeditiously be resolved by the state court.

This Court may permissively abstain from hearing an action "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). When determining whether to permissively abstain, the Court considers one or more of the following twelve factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of [the court's] docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

*See Exeter*, 2013 Bankr. LEXIS 1008, at *10-11 (citations and quotations omitted). "Permissive abstention under Section 1334(c)(1) is within the sound discretion of the bankruptcy court." *In re Abir*, Case No. 09-CV-2871 (JF), 2010 U.S. Dist. LEXIS 28471, at *21 (E.D.N.Y. Mar. 22, 2010).

On balance, the Court finds that the presence of factors in support of partial abstention outweigh those against; however, because this Court presided over the sale process and entered the Sale Order, the construction of the Sale Order and APA are issues better left for this Court to decide.

*(1) the effect on the efficient administration of the estate*

Addressing the first factor, the Court finds that abstention could adversely affect the efficient administration of Debtors' bankruptcy estates, but only to the extent the Court does not clarify the scope and effect of its Sale Order.  Although Goldie, PCD, and Quality One have been litigating before the District Court and the State Court for over two years, the parties have only more recently presented issues to this Court concerning the Sale Order and APA.  In spite of its concerns for Quality One's forum shopping, this Court believes the efficient and cost effective administration of justice weighs in favor of this Court interpreting its Sale Order and giving guidance to the State Court, because this Court presided over the proceedings that resulted in the successful sale of Debtors' assets and entered the very Sale Order the parties wish the Court to interpret.  Moreover, for the reasons stated below, the Court has determined to lift the automatic stay so that these parties may proceed to judgment in the State Court Action, which will allow for the underlying contract disputes to be adjudicated in a more streamlined fashion.

*(2) the extent to which state law issues predominate over bankruptcy issues*

The Enforcement Motion primarily concerns the construction of this Court's Sale Order, an order which this Court is charged with carrying out under the Bankruptcy Code.  *See* 11 U.S.C. §§ 363, 105(a); *Elliott v. GM LLC (In re Motors Liquidation Co.)*, 2016 U.S. App. LEXIS 12848, at *31 (2d Cir. N.Y. July 13, 2016).  This Court is better suited to address the pending legal issues concerning the Sale Order because it more typically deals with sales of a debtor's assets under § 363 and the enforcement of sale orders under the Bankruptcy Code, but will defer to the State Court to implement this Court's conclusions in the State Court Action.

*(3) the difficulty or unsettled nature of the applicable state law*

As stated above, the Enforcement Motion predominantly involves issues under the Bankruptcy Code.  None of the parties have argued, nor is there any indication that the Enforcement Motion implicates difficult or unsettled areas of Massachusetts or New York law[8].

*(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court*

This factor undoubtedly favors abstention.  This dispute grew out of PCD's and Quality One's failed substitution attempt before the State Court in 2013, which occurred shortly after this Court had entered the Sale Order.  Quality One essentially attempted to circumvent the State Court's denial of the substitution motion when it commenced the District Court Action.  After the District Court decided that the District Court Action should be stayed pending the disposition of the State Court Action, Quality One returned to the State Court and unsuccessfully moved to dismiss the counterclaims Goldie sought to assert against it.  Quality One raised similar arguments in that motion to those made in the Enforcement Motion, and lost, albeit not on the merits.

*(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334 and (7) the substance rather than the form of an asserted "core" proceeding*

This Court's decision to interpret and enforce the Sale Order falls under its "arising in" jurisdiction under 28 U.S.C. § 1334(b); the Sale Order would not exist but for § 363 of the Code and § 105(a) of the Code charges this Court with carrying out its own orders.  *See Motors Liquidation Co.*, 2016 U.S. App. LEXIS 12848, at *31.  Accordingly, this Court, like all other bankruptcy courts, "plainly has jurisdiction to interpret and enforce its own orders."  *Id.* (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151, 129 S. Ct. 2195, 174 L. Ed. 2d 99 (2009)).  Moreover, the enforcement and implementation of the Sale Order is a "core" bankruptcy

---

[8] The APA is governed by New York law.  APA § 13.6.

proceeding under 28 U.S.C. § 157(b)(2), and is thus a discrete matter which Congress has determined this Court should hear and determine.  *See Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 229-30 (2d Cir. N.Y. 2002).  The Court also explicitly retained jurisdiction to construe and enforce the Sale Order in the Sale Order itself.  *See* Sale Order, at p. 36, ¶ 32.  However, Goldie asserts, and Quality One and the Trust do not disagree, that the State Court has concurrent jurisdiction to decide the issues raised by the Enforcement Motion; as stated above, the Court has only addressed the portions of the Enforcement Motion that ask this Court to define the scope and effect of the Sale Order and Quality One's request for attorneys' fees and will leave the undecided portions of the Enforcement Motion to the State Court to adjudicate.

*(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case*

The disposition of the Enforcement Motion has no direct impact on the Debtors' main bankruptcy case.  This Court's partial adjudication of the Enforcement Motion coupled with the lifting of the stay will however allow the litigation before the State Court to proceed in a more streamlined fashion, and thereby allow for the liquidation of the parties' claims.

*(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court*

The Enforcement Motion involves discrete issues that may be severed from the main bankruptcy case and left to the State Court to adjudicate.  This factor favors abstention.

*(9) the burden on the Court's docket*

The Court does not anticipate that deciding the Enforcement Motion will cause any burden to its docket, and no party has argued otherwise, but the Court nevertheless concludes

that the State Court is the appropriate forum to decide the undecided portions of the Enforcement Motion.

*(10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties*

Given the timing and substance of the State Court and District Court Actions, and the Enforcement Motion, and for the reasons cited in the Court's discussion of the fourth abstention factor, the Court finds that Quality One's filing of the Enforcement Motion involves improper forum shopping.

*(11) the existence of a right to a jury trial*

None of the parties have requested a jury trial.

*(12) the presence in the proceeding of non-debtor parties*

The Enforcement Motion is largely a dispute between Quality One and Goldie, two non-debtor parties, over the scope and reach of the Sale Order and the adjudication of state law rights. For the reasons stated below, however, the Court will be lifting the automatic stay so that Goldie and the Trust can litigate the Goldie Claim before the State Court.

Based on this Court's analysis of the twelve factors outlined above and in the interests of justice, the Court will partially abstain from deciding the Enforcement Motion as outlined herein.

### 5. *Goldie may litigate the Goldie Claim in State Court*

Paragraph 31 of the Confirmation Order provides that the automatic stay that existed on the Petition Date would remain in effect until the effective date of the Plan (May 20, 2014). However, Section 15.9 of the confirmed Plan provides that the automatic stay shall remain in full force and effect until a final distribution has been made to holders of allowed unsecured claims, a date that has not yet occurred. Paragraph 48 of the Confirmation Order states that its terms shall override those of the Plan in the event of any inconsistency between the terms of the Plan and the

Confirmation Order.  The Confirmation Order controls over these inconsistent terms and therefore the automatic stay is no longer in effect.

Out of an abundance of caution, the Court has nevertheless analyzed whether cause to lift the stay exists under 11 U.S.C. § 362(d)(1); the Court finds that it does.

Section 362(d)(1) provides in relevant part that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

11 U.S.C. § 362(d)(1).  Although "cause" is not defined in the Bankruptcy Code, courts in this district have found that the desire to continue litigation in another forum may constitute "cause" under appropriate circumstances.  *JC Ryan EBCO/H&G LLC v. Cyber-Struct Inc. (In re Fierro)*, 2015 Bankr. LEXIS 1779 (Bankr. E.D.N.Y. May 29, 2015); *In re Anton*, 145 B.R. 767, 769 (Bankr. E.D.N.Y. 1992).

In *In re Sonnax Indus., Inc.*, the Second Circuit set forth a non-exclusive list of factors that may be relevant in determining whether the stay should be lifted to allow litigation to continue outside of bankruptcy court.  These factors include: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other

proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.  907 F.2d 1280, 1286 (2d Cir. 1990).

After analyzing these factors here, this Court has determined that cause exists to allow the parties to litigate the Claim Objection before the State Court.  The interests of judicial economy and the avoidance of inconsistent rulings favor allowing the State Court to determine the contract and other state law issues underlying the Goldie Claim which have already been pending in the State Court Action for several years; the State Court is the forum originally selected by PCD and the one in which PCD, Goldie, and Quality One have all appeared and joined issue.  Although significant discovery does not appear to have taken place, the State Court is more familiar with the parties' dispute having presided over substantial motion practice and having rendered various rulings.  Finally, this Court finds that the purported harm to PCD's estate is overstated.  The Trust will not need to retain to new Massachusetts counsel; PCD is already represented by counsel in the State Court Action, the same counsel who commenced the action on its behalf, and who should already be fully familiar with the relevant facts.  Moreover, the parties shall be directed to return to this Court upon entry of a judgment in the State Court Action so that this Court can determine, if necessary, whether the Goldie Claim is entitled to secured status.  This will obviate the risk the Trust refers to of the State Court incorrectly applying bankruptcy principles with respect to the PCD – Goldie dispute.

For similar reasons, and to the extent necessary, this Court grants Goldie relief from the continued effect of the injunction imposed in the Confirmation Order, which enjoins certain

litigation against PCD, in order to liquidate the Goldie Claim in the State Court Action .[9]  The Confirmation Order expressly authorized Goldie to assert "any claims, counterclaims, offsets, defenses, or rights of recoupment against any non-Debtor party, including Q1W Newco, LLC and Quality One Wireless, LLC, or against the Debtors in any timely filed proof of claim;" there would be no just cause at this juncture to not modify the scope of the injunction to allow the parties to complete their litigation in the forum they originally chose.

## Conclusion

Based on the foregoing, it is hereby

**ORDERED**, that the Enforcement Motion is granted in part and denied in part; the Court's Sale Order shall have the construction and interpretation stated above; and it is further

**ORDERED**, that Quality One's request for attorneys' fees is denied; and it is further

**ORDERED**, that the Abstention Motion is granted in part and denied in part; the Court has determined to abstain from deciding the balance of the Enforcement Motion as stated above; and it is further

**ORDERED**, that the Lift Stay Motion is granted; the stay in effect pursuant to 11 U.S.C. § 362(a) is lifted for cause pursuant to 11 U.S.C.§ 362(d)(1) and the scope of the injunction imposed under the Confirmation Order is modified for the purpose of allowing the State Court Action to proceed to judgment; and it is further

---

[9] The Confirmation Order provides at ¶ 20 as follows:

> Notwithstanding the provisions of this Confirmation Order, including [the injunction] paragraph 19 above, or of the Plan, nothing herein shall be construed to, or shall in fact, limit or affect in any way the rights of The Goldie Group, LLC (the "Goldie Group") or Phillip Christopher ("Christopher") to assert any claims, counterclaims, offsets, defenses, or rights of recoupment against any non-Debtor party, including Q1W Newco, LLC and Quality One Wireless, LLC, or against the Debtors in any timely filed proof of claim ; provided, however, that for the avoidance of doubt, the treatment of any Claims asserted against the Debtors by the Goldie Group or Christopher shall be pursuant to the Plan.

**ORDERED**, that Goldie shall amend or withdraw the Goldie Claim within **sixty (60) days** of a judgment being entered by the State Court, as the circumstances warrant; the Trust shall file a status letter regarding its Claim Objection within **thirty (30) days** after Goldie's amendment or withdrawal of the Goldie Claim.



Dated: August 5, 2016
     Central Islip, New York

                                         **Alan S. Trust**
                        **United States Bankruptcy Judge**